### 48429. IVINS v. THE STATE.
### 48430. WALKER v. THE STATE.

Hall, Presiding Judge. Appellants Walker and Ivins, here on a certificate of immediate review, appeal the trial court's overruling of their motions to suppress marijuana. Both appellants stand charged with possession of less than an ounce.

1. At the hearing on the motion, the arresting officer testified that at about 4:45 a.m. on March 12, 1973, he and other officers were doing routine patrolling when they saw two white long-haired males, appellants, walking along the road. They were doing nothing unlawful, nor did they attempt to flee as the officers approached. There were both residences and businesses in the general area, but appellants were not near the residences. There had been no reports that night of trouble in that area. However, the officers stopped them for questioning because they did not recognize either of them and they were out at an unusual hour. An initial frisk of the two turned up no weapons, but at some time during this transaction one of the officers noticed on Walker a belt with a buckle of an unusual design, resembling a "marijuana pipe." When requested to do so, Walker took it off for their examination.

The officers concluded on the basis of the belt's design that a search of Walker for marijuana was indicated and the search was conducted and yielded a plug of a gummy substance believed by them to be hashish, wrapped in tinfoil in one of his shirt pockets. Walker was then arrested on charges of marijuana possession.

The frisk of Ivins had turned up nothing; however he was taken to the police station with Walker because of "the relationship between the two of them" (that is, they were together) for "[r]outine investigation. No charges." He was "not under arrest," however the officer stated that Ivins had not been free to go.

On the way to the police station appellants asked to go by the place where they were staying to get their knapsacks, and the officers complied. At the police station, they wanted to retrieve things from their packs and "We [the officers] told them we would have to look at everything in the bag before they started dragging everything out." The knapsacks were searched. In Ivins' bag a matchbox containing traces of marijuana was found, and he was then "arrested" and charged with possession.

On this appeal, with respect to appellant Walker no contention is made that the initial "stop and frisk" was unwarranted. Therefore, our attention moves to the question whether the officers' discovery of the pipe-belt buckle gave them probable cause to arrest him, this being the prerequisite for further personal searching. Our inquiry is whether the facts and circumstances within the officers' knowledge were sufficient to warrant men of reasonable caution in the belief that an offense had been or was being committed, Code § 27-207; 68 AmJur2d 695, Searches & Seizures, § 42 (1973), and the burden is on the state to make that showing. *Peters v. State,* 114 Ga. App. 595 (152 SE2d 647).

Study of the record reveals that no showing was made by the state that the pipe-belt buckle was inherently incriminating because no facts were adduced tending to show the likelihood that this implement was peculiarly a marijuana smoking device or that the agents were knowledgeable of such and clearly identified it as such on the basis of that knowledge. The record shows only the officers' conclusory testimony that it was "possibly" a marijuana smoking device, and that it was "very similar" to such a device, though they admitted it could have been used for smoking tobacco. Mere conclusions have no probative value and are not admissible in evidence. *Chandler v. Gately,* 119 Ga. App. 513, 517 (167 SE2d 697). The trial judge erred in ruling that sufficient probable cause existed for the search of Walker which turned up the marijuana in his pocket.

We find the reasoning of State v. Gannaway, 291 Minn. 391 (191 NW2d 555) persuasive on almost identical facts. Defendant, stopped for a traffic offense, was frisked for weapons in the

course of which the officer, thinking a bulge a gun, removed it and discovered a corn cob pipe. The officer noted only that the pipe was "usable" for marijuana smoking and then pulled everything else from Gannaway's pockets, thus turning up marijuana, for possession of which he was arrested. The court found there had been no probable cause for the further search, even though chemical analysis later showed a marijuana residue in the pipe bowl. Similarly, here, a pipe merely usable for marijuana smoking but for other things as well, did not justify the further search of Walker. Merely placing a possible criminal construction on a thing or event which will support other constructions is not a reliable tactic to justify personal searches. See *Uva v. State,* 124 Ga. App. 486 (184 SE2d 200).

Because we decide Walker's appeal on the foregoing ground, it is unnecessary to consider the further problem with the record in this connection, which is that it is impossible to tell from the officers' testimony whether the buckle was in plain view or whether some intrusion beneath Walker's outer clothing, perhaps inconsistent with the limited scope of a permissible "stop and frisk," was required to bring it into view. See Sibron v. New York, 392 U. S. 40; Terry v. Ohio, 392 U. S. 1; 68 AmJur2d supra, at § 103.

2. With respect to appellant Ivins, our inquiry centers on search of his knapsack at the police station, when the traces of marijuana were discovered therein. The state grounds its position on its contention that Ivins voluntarily consented to the search of his pack at the station, and that he was not then under arrest. The record will not support this position.

The initial frisk of Ivins had revealed nothing incriminating, and the officers had no valid reason to detain him and to insist that he accompany them to the police station merely because they had found marijuana on his companion. Ivins was illegally in police custody, and the search of his knapsack must be considered in that context. Nor do we find that the record reflects Ivins' "consent" to the search of his knapsack. The most it shows is that the officers said they "would have to look at everything in the bag" and Ivins apparently acquiesced in that exercise of apparent authority. The record is devoid of indications that he was given any alternative, such as being told that a search of the knapsack would not be required if he would forego having it in his cell and simply allow it to be tagged and stored, as customary practice at the jail also allowed. Compare Bretti v. Wainwright,

439 F2d 1042 (5th Cir.). We do not find that such acquiescence as Ivins showed equals consent.

"Where consent to a search follows an illegal arrest or detention, some courts take the view that the consent is necessarily invalid, while others hold that although there is a heavy burden on the prosecution to prove an absence of duress, a valid consent may be found." 68 AmJur2d 702, Searches & Seizures § 48 (1973). See generally, Annot., Search-Consent While in Custody, 9 ALR3d 858 (1966).

Though custody does not necessarily preclude voluntariness, see U. S. v. Fike, 449 F2d 191 (5th Cir.), on this record we are unable to find consent; the most we find is an apparent lack of protest, and this is not adequate, see Ray v. U. S., 84 F2d 654 (5th Cir.), to carry the state's burden which is particularly strong in cases of illegal custody.

What may be "consent" as to other individuals may not always be regarded as "consent" to the requests of an officer of the law. See, *Holtzendorf v. State,* 125 Ga. App. 747, 751 (188 SE2d 879). Accord, Ray v. U. S., supra.

Because there was no search warrant and no probable cause to arrest Ivins prior to taking him to the police station, the search may not be justified as incident to such arrest. As we do not find consent to the search, it follows that the same was illegal and the marijuana so discovered should have been suppressed.

*Judgment reversed as to both appellants. Evans and Clark, JJ., concur.*

SUBMITTED SEPTEMBER 13, 1973 — DECIDED OCTOBER 10, 1973.

*Young, Young & Ellerbee, F. Thomas Young,* for appellants.
*George T. Talley, Solicitor,* for appellee.