## 48419. MERRILL v. THE STATE.

CLARK, Judge. This appeal is by one of two defendants who were jointly indicted, tried and convicted of possession of marijuana. Co-defendant paid the fine imposed upon him. Appellant received an imprisonment sentence after the court declined to

accept the jury's recommendation of misdemeanor punishment. Appellant's new trial motion was denied and this appeal followed.

Two deputy sheriffs were investigating a prowler call around 11:30 p.m. and had brought their unmarked vehicle to a stop on a side road prior to entering the main highway. One of these officers was in uniform. Appellant was driving his van on the highway with the co-defendant as a passenger and saw the deputy sheriffs' unmarked car halted at the stop sign. Although there was no connection between the defendants and the prowler investigation the deputies followed the defendant's van. The deputies testified that while in the act of following the vehicle they saw a brown paper bag thrown from the van. There is a discrepancy in the testimony of the two deputies as to the side from which it was thrown. After this incident and at some distance beyond where they had observed the throwing of the bag the deputies halted the van. The reason testified to by one deputy was that "we make a case against them for littering the highway" (T. 197) and the other said "when they threw the sack out, then I knew they needed stopping." (T. 124-125). No littering charge was made.

Upon halting the van the officers asked to search it. Appellant testified he let them search it "because I knew if I didn't he would search it anyway." (T. 132). No drugs were found and the van was allowed to proceed. During the search the officers observed some cigarette rolling papers presumably of the kind used to roll marijuana cigarettes. These papers were later taken from the van but not until after both defendants had been jailed. This imprisonment occurred as a result of the officers returning to the location where the bag had been thrown and discovering it to contain what appeared to be marijuana. Other facts developed during the trial will be presented later in this opinion as we undertake to deal with the various enumerations of error in the order in which events occurred at the trial.

1. *Motion for Continuance.* (Enumeration 2). Two grounds for continuance were made at the commencement of the trial. One dealt with allegedly prejudicial publicity and the other was based upon the case being called for trial prior to another case having a lower number on the docket. The latter point was based upon Code § 27-1301 which provides for criminal cases to be "called in the order in which they stand on the docket, unless the defendant be in jail, or otherwise in the sound discretion of the

court." This provision was ruled directory and not mandatory in *Rosenbrook v. State,* 78 Ga. 111 (2), where it was also held that "[B]efore a party could be heard to object, he must show injury to himself, resulting from the act of the court." As neither injury nor abuse of "sound discretion" were shown we find the trial judge did not err in ruling against appellant on this ground.

The alleged prejudicial publicity was based upon four articles published in the largest local newspaper. The last article appeared the day before the trial and referred to defendant's prior conviction on marijuana possession and stated the details of the arrest.

Eighteen out of forty-seven prospective jurors had read some of the articles. Each was asked by the defense: "Do you believe that reading that article would affect your consideration of the case, [juror's name]. . . do you believe you could divorce what you read from your mind so you could give a total and free consideration to this case?" One juror was dismissed for cause because he replied: "Well, I don't believe there is any way I could completely dismiss them from my mind." (T. 22). The others replied affirmatively.

"The test as to whether unfavorable newspaper publicity has so prejudiced a case against one accused of a crime that a fair trial cannot be had is whether the jurors summoned to try the case have formed fixed opinions as to the guilt or innocence of the accused from reading such unfavorable newspaper publicity. *Dutton v. State,* 228 Ga. 850, 852 (188 SE2d 794). . . [The transcript] shows without dispute that the jurors who were selected to try the accused had formed no fixed opinion as to his guilt or innocence and were perfectly impartial between him and the state, notwithstanding the wide newspaper publicity which was given to the case before the trial." *Krist v. Caldwell,* 230 Ga. 536 (2) (198 SE2d 161). " 'There is no inference of prejudice requiring a change of venue (or a continuance) from the mere fact of the publishing of descriptive or even denunciatory matter, or even from the juror's having formed or expressed an opinion from rumor or from reports from newspapers or other news media; what is required is a showing that the juror had formed such a fixed or unchangeable opinion as to the guilt or innocence of the defendant as would not yield readily to the testimony.' *Thacker v. State,* 226 Ga. 170, 174 (173 SE2d 186). The granting or refusing of a continuance, like the granting or the refusing of a motion for a change of venue, is within the discretion of the

trial judge. Such discretion will not be controlled by the appellate courts unless abused. . . [Cit.]" *McCrary v. State,* 229 Ga. 733 (1) (194 SE2d 480).

Defendant cites *Tant v. State,* 123 Ga. App. 760 (3) (182 SE2d 502) as supporting his position. There our court said: "The evidence failed to show a 'probability of unfairness' or a 'reasonable likelihood' that a fair trial could not be obtained as applied in the ruling of Sheppard v. Maxwell, 384 U. S. 333 (86 SC 1507, 16 LE2d 600). Nor does the voir dire examination of jurors, some of whom had read such articles, show anything to the contrary. (b) Nor did the trial court abuse its discretion in permitting a juror to serve who had read the local newspaper articles and had seen the pictures where such juror said that he 'believed' he could serve without prejudice and could render a just verdict under the evidence."

Even under *Tant v. State,* supra, it appears the trial judge properly denied the motion for continuance relative to prejudicial publicity. It further is manifest from the transcript that the situation which defendant alleges created prejudicial publicity falls far short of the circumstances determined to be prejudicial in Sheppard v. Maxwell, 384 U. S. 333, supra; Irvin v. Dowd, 359 U. S. 394 (79 SC 825, 3 LE2d 900); and Marshall v. United States, 360 U. S. 310 (79 SC 1171, 3 LE2d 1250).

2. *Denial of Severance Motion* (Enumeration 3). Both defendants filed motions seeking separate trials. Appellant stated the basis of his motion to be "On the ground that he has been advised by counsel for Whitley [co-defendant] that he intends to introduce evidence other than defendant's statement and that he intends to refer to defendant Merrill's character or record." This severance motion further stated that "Defendant Merrill presently does not intend to introduce evidence other than his statement, and he will lose the right to closing argument to the jury by Defendant Whitley's action. All of the aforesaid will greatly prejudice the trial of Defendant Merrill's case." (T. 16). The co-defendant's severance motion not only stated "there will be variations in their methods of trial tactics between the two that are irreconcilable and that the result will be that both your defendant Charlie Fred Whitley, Jr. and Ronald Sterling Merrill will be unable to obtain a fair and just trial because of the same" (R. 22) but added a cosmetic handicap facing Whitley, the co-defendant. This referred to the physiognomy difference of appellant and his attorney both of whom possessed "complete

and full long beard, long hair in an unkept [sic] state" as contrasted with the co-defendant and his counsel both of whom were clean shaven and with short haircuts. Both severance motions were denied.

When the General Assembly undertook in 1971 to terminate the then existing absolute right to severance by joint defendants the determination for denial or grant of separate trials was placed "in the discretion of the trial court." Code Ann. § 27-2101 (Ga. L. 1971, p. 891). Since the 1971 enactment our appellate courts have passed upon two appeals. In *Mathis v. State,* 231 Ga. 401 (2) (202 SE2d 73), the Supreme Court ruled there was no abuse of discretion in the trial judge ordering a joint trial and denying the severance motion which had been based "on the grounds that the prosecution intended to introduce a statement implicating him which statement was made by the co-defendant who could not be cross examined and that his constitutional right to confront witnesses used against him would be violated." In *Moore v. State,* 129 Ga. App. 612 (1) (200 SE2d 320) the motion for severance by one of several defendants was "made on the ground that because two of the defendants were not going to be sworn so as to be subject to cross examination but make only an unsworn statement, the movant would be denied his rights to be confronted by his accuser and to cross examine the witnesses against him." Our court affirmed the ruling of the trial judge in denying the severance motion.

We recognize that the right to make the opening and closing arguments to the jury is an important right to the extent that an improper denial of it will work a reversal (*Hart v. State,* 88 Ga. App. 334 (2) (76 SE2d 561)). We are also impressed with the persuasive supplemental brief supplied by appellant's counsel urging us to follow the Federal cases and the recommended Amercian Bar Association Minimum Standards relating to joinder and severance. Nevertheless, we are constrained to hold in the case sub judice where both defendants denied having seen the bag and with no inconsistency in their testimony and with neither implicating the other in the offense that the trial judge's motion was not an abuse of the discretion vested in him by our statute.

3. *Voir Dire* (Enumerations 2 and 8). (a) Appellant asserts error on the trial court's refusal to permit defense counsel to conduct individual voir dire examination of the jurors outside the presence of the other jurors. Such right of isolated examination

was decided adversely to appellant's contention in *Whitlock v. State,* 230 Ga. 700 (5) (198 SE2d 865). There the Supreme Court discussed voir dire stating: "The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review." No manifest abuse is shown in the case sub judice.

(b) Defendant avers error in the denial of his motion for allowance of additional jury strikes. Code Ann. § 27-2101 provides that where a trial involves joint defenses "[T]he court, upon request of defendants, acting in its sole discretion, may allow an equal number of additional strikes, not to exceed five each, to the defendants as the court shall deem necessary to the ends that justice may prevail." Nothing in the record indicates the denial of this motion was an abuse of the court's "sole discretion."

(c) Defendant contends error in the court's refusal to permit counsel to ask two questions. One of these was: "Have you read any of the President's Commission Report [which] recommended decriminalization of marijuana?" (T. 19). The other was: "Have you formed an opinion as to whether or not marijuana is an addictive drug?" (T. 19).

Defendant asserts *Lane v. State,* 126 Ga. App. 375 (190 SE2d 576) supports his position. There we held that where there was no indication that the examination on voir dire was too lengthy or drawn out the trial judge's announcement that he would allow counsel to ask only two more questions of the juror was "an arbitrary limitation and curtailment of the right of defendant to have a fair trial through a full and thorough examination of the jurors. . ." Hn. 6. Our opinion went on to quote from *Hill v. State,* 221 Ga. 65 (8) (142 SE2d 909): "'The language of Code Ann. § 59-705 is broad, but the trial judge still retains the discretion to limit the examination of prospective jurors *to questions dealing directly with the specific case.'* (Emphasis supplied.) The discretion of the judge is thus spelled out and is prescribed by the language above emphasized." Under the *Hill* doctrine denial of the right to query as to marijuana being an addictive drug would not be error. Likewise there was no error in refusing to permit questioning as to the President's Commission Report as possession of marijuana is a crime under our state statutes. Jurors are bound to reach their verdict in accordance with law,

not literature.

4. *Motion to Suppress* (Enumeration 4). Defendant sought to suppress the cigarette rolling papers. These had been observed upon the van's open dashboard during the initial search of the vehicle but not seized until after the defendants had been jailed following the examination of the brown bag thrown from the van.

The question to be determined is whether the search of the van during the investigative stop when the officers first learned of the presence of rolling papers in the open dashboard was in accordance with due process.

The deputies were investigating a prowler call when they stopped defendants. They had seen a sack being thrown from the van. On being asked on cross examination, "What indication, Mr. Bryan [deputy], did you have that the vehicle that passed was possibly connected with the alleged prowler call?" the deputy responded: "It was the only vehicle moving on that road," (T. 140) and that the deputies were on the north exit road from the subdivision when they first saw defendants approaching from the south where another exit from the subdivision was located.

Defendant stated on the motion to suppress that upon being asked by the deputy if the van could be searched, he replied, "Yes, he asked me and I went ahead and let him because I knew if I didn't he would search it anyway. He would hassle me, so I went ahead." (T. 132).

A police officer has a limited right to an investigative stop of a person or vehicle. "[C]ircumstances short of probable cause for arrest may justify the stopping of a pedestrian or motorist for limited questioning. [Cits.]" *Anderson v. State,* 123 Ga. App. 57, 60 (179 SE2d 286). Sub judice, there appear to be two grounds for a limited questioning: (1) the prowler call and the fact that the van was the only car abroad which had been seen by the deputies in that area; (2) littering, since a paper sack had been thrown from the van.

"Voluntariness is a question of a fact to be determined from all the circumstances. . ." Schneckloth v. Bustmonte, 412 U. S. 218, 248 (93 SC 2041 36 LE2d 854).

"The officer's testimony is uncontradicted; it does not appear that the defendant evinced any reluctance or was subjected to any coercion, express or implied; no other factors such as youth, lack of education, low intelligence, length of detention, nature of the questioning, use of physical force, and so on (cases cited in Schneckloth, supra) are present here. The distinction can be

clearly brought into focus by a comparison of the circumstances here and those in *Kelly v. State,* 129 Ga. App. 131 (198 SE2d 910). There a so-called voluntary consent to search which disclosed contraband was held insufficient where it appeared that officers stopped the vehicle on the suggestion of an unnamed informer, without any facts giving rise to even an 'articulable suspicion' of law violation (see *Brooks v. State,* 129 Ga. App. 109 (198 SE2d 892)) surrounded the car, and, with drawn pistol, 'requested' the keys to the trunk. The circumstances surrounding and inducing the giving of consent may always be inquired into; each case must be decided on its own facts." *Brand v. State,* 129 Ga. App. 747 (201 SE2d 180).

"The facts show defendant's subsequent consent to search and a voluntary waiver of any alleged illegal search and seizure, and therefore we do not reach the issue of probable cause. *Touchstone v. State,* 121 Ga. App. 602 (1) (174 SE2d 450); *Trull v. Smith,* 226 Ga. 665 (5) (177 SE2d 73); Annot., 9 ALR3d 858, §§ 5(h), 18 (1966)." *Connor v. State,* 130 Ga. App. 74 (202 SE2d 200).

"What we regard to be of decisive significance here is that there was evidence authorizing the trial judge, as trior of the facts, to find that the appellant freely and voluntarily consented to the search of his home, which validated the search and seizure. See in this connection *Ferguson v. State,* 218 Ga. 173 (8) (126 SE2d 798); *Tolbert v. State,* 224 Ga. 291, 294 (161 SE2d 279); *Young v. State,* 113 Ga. App. 497, 498 (148 SE2d 461); *Harris v. State,* 120 Ga. App. 359 (1) (170 SE2d 43). This alone authorized the overruling of the motion." *Guest v. State,* 230 Ga. 569, 571 (198 SE2d 158).

Therefore, the search was valid. However, the rolling papers were not seized at this point in time but after the defendants had been jailed. In *Ivins v. State,* 129 Ga. App. 865 (201 SE2d 683)) we held post-arrest evidence to be illegally obtained because the initial "stop and frisk" was unwarranted and there was a lack of consent. In the instant case, however, the stop was reasonable, the consent initially given to search the vehicle was not withdrawn, and the rolling papers were in plain view "scattered across the dash."

We recognize cigarette rolling papers are not contraband as people still roll their own. But " 'Evidence as to . . . all the circumstances connected with the arrest, are proper matters to be submitted to the jury to be weighed by them for what they are worth.' [Cits.] Since the possession of money is not per se incriminating

evidence, the jury was entitled to decide whether the defendant's possession of it was for a lawful purpose. . . , or whether the possession, in connection with other circumstances, was evidence that the defendant was engaged in an unlawful enterprise in violation of the Uniform Narcotic Drug Act." *Reid v. State,* 129 Ga. App. 41 (198 SE2d 358).

Defendant argues that the deputy's failure to give an inventory of the items taken from the van taints the seizure. "Nor did the failure to give the appellant an inventory of the articles obtained by the search and seizure void it. This is a ministerial act, not affecting the validity of the search. *Williams v. State,* 125 Ga. App. 170 (1) (186 SE2d 756)." *Guest v. State,* 230 Ga. 569, 572, supra.

The trial judge did not err in denying the motion to suppress.

5. *Expert Testimony* (Enumerations 6 and 7). An employee of the state crime laboratory who identified herself as being a "drug identification analyst" stated her qualifications including a bachelor's degree in chemistry, graduate training in bio-chemistry, and additional training under supervisors at her place of employment. She identified the green leafy material which the state introduced in evidence as being marijuana. Defense counsel declined to admit the witness to be qualified and conducted an extensive cross examination. During the re-cross examination the witness as a part of her answer said that "I don't know if I have been qualified as an expert in this or not." (T. 184). Emphasizing this portion of the testimony appellant argues that it was error for her opinion testimony as to marijuana to have been admitted and that her lack of expertise should have prevented state's Exhibit No. 2 being entered into evidence over objection. Additionally, it is claimed "The court erred in not permitting the alleged expert to be cross-examined concerning whether marijuana is addictive." (R. 58 and T. 181).

The question of whether or not a witness is entitled to be designated as an expert addresses itself to the sound discretion of the trial court. *Carroll v. Hayes,* 98 Ga. App. 450, 452 (105 SE2d 755). The doubt as expressed by the witness did not denigrate her credentials. As was said in *Knudsen v. Duffee-Freeman, Inc.,* 95 Ga. App. 872, 879 (99 SE2d 370), "[N]or did it necessarily follow that he was not qualified to testify as an expert because he himself was of the opinion that he was not entitled to be so accredited." The controlling principle is stated in headnote 2 of *American Fire & Cas. Co. v. Grizzle,* 108 Ga. App. 496 (2) (133

SE2d 400) to be that "It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular art, science or profession as to entitle him to be deemed prima facie an expert."

As to restricting the cross examination we find no error therein. "The right of a party to a thorough and sifting cross examination as to witnesses called against him is not infringed by confining such examination to matters that are relevant to the issues in the case." *Bass v. Bass,* 222 Ga. 378 (2a) (149 SE2d 818). In the case sub judice the initial cross examination covered 12 pages with subsequent re-cross examination. There was ample cross examination.

6. *Mistrial Motions* (Enumerations 9, 10 and 11). (a) During cross examination of defendant's character witness the district attorney propounded this question: "[B]ut what about this gal out there that he is the father of his child, do you know anything about that?" (T. 229). Defense attorney objected stating, "That's highly prejudicial and grounds for mistrial." The court overruled the objection. Such ruling was not error. On cross examination of a character witness "[P]articular transactions, or statements of single individuals, may be brought into the inquiry, in testing the extent and foundation of the witness's knowledge and the correctness of his testimony on direct examination." *Moulder v. State,* 9 Ga. App. 438 (71 SE 682).

(b) Appellant argues the district attorney made an improper statement to the jury. The language used was "I feel that this case is so strong, that the evidence shows that this case is so strong, that I am going to make the bulk of my argument to you in the opening and then ask them to shoot holes in it." (T. 243). There was no error in overruling the defense objection.

(c) Another enumeration argues the district attorney made an improper argument based on "alleged facts not in evidence [in stating] marijuana use leads to hard drugs and that the sack containing the alleged marijuana, S-2, could not have been tested for fingerprints."

Although we are of the opinion the argument concerning marijuana leading to hard drugs was not based on any facts in the evidence, we cannot hold such assertion to be harmful error requiring a new trial. Likewise the argument dealing with the failure to test the sack for fingerprints was not harmful error, as it came within the category of a deduction from the evidence. As was said in *Owens v. State,* 120 Ga. 209 (3) (47 SE 545), "While

counsel should not be permitted in argument to state facts which are not in evidence, it is permissible to draw deductions from the evidence; and the fact that the deductions may be illogical, unreasonable, or even absurd, is a matter for reply by adverse counsel, and not for rebuke by the court."

7. *Denial of Defense Motion for Directed Verdict* (Enumeration 5). Some confusion has heretofore existed as to our appellate courts possessing the right to reverse a trial judge based upon his denial of a motion for a directed verdict in a criminal case. Myriads of cases recited "It is never error for the trial judge to deny a motion for a directed verdict in a criminal case." This confusion is now ended by the recent decision of *Merino v. State,* 230 Ga. 604 (198 SE2d 311). There at page 605 the Supreme Court made clear that "[I]t constitutes reversible error for the trial court to refuse to direct a verdict of acquittal where there is absolutely no conflict in the evidence and the verdict of acquittal is demanded as a matter of law." In the case sub judice, however, we find that there was no error in the court's refusal to direct a verdict as there was ample evidence warranting submission to the jury.

8. *General Grounds* (Enumerations 1 and 5). Our review of the trial transcript confirms that the trial judge was also correct in overruling the general grounds of the new trial motion. Defendant was the owner and driver of the vehicle from which the police saw the brown bag containing contraband drugs thrown.

"After a verdict of guilty has been returned, in passing on defendant's motion for new trial the trial court and the appellate court are to afford the evidence that view which is most favorable to the state, for every presumption and every inference is in favor of the verdict. [Cit.]" *Williams v. State,* 129 Ga. App. 103 (7) (198 SE2d 683).

*Judgment affirmed. Hall, P. J., concurs. Evans, J., concurs in the judgment only.*

ARGUED SEPTEMBER 13, 1973 — DECIDED JANUARY 7, 1974 — REHEARING DENIED FEBRUARY 4, 1974.

*Al M. Horn,* for appellant.
*Eldridge W. Fleming, District Attorney,* for appellee.