## A00A1634. WILKINS v. THE STATE.
### (541 SE2d 458)

POPE, Presiding Judge.
Defendant Lester Bebee Wilkins was convicted by a jury of two counts of arson in the first degree. At sentencing, the trial court merged Count 2 into Count 1. Wilkins appeals following the denial of his motion for new trial.

1. Relying on *Cuzzort v. State*, 271 Ga. 464 (519 SE2d 687) (1999), Wilkins contends the trial court erred by calling the case out of the order listed on the trial calendar. We find no error. *Cuzzort* clearly stands for the proposition that the trial judge has discretion under OCGA § 17-8-1 to call a case out of order. Id. at 465 (3). Moreover, in order to secure a reversal on this basis, harm as well as an abuse of discretion must be shown. *Rosenbrook v. State*, 78 Ga. 111, hn. 2 (1886); *State v. Jessup*, 187 Ga. App. 429, 430 (370 SE2d 489) (1988) (physical precedent only); *Merrill v. State*, 130 Ga. App. 745, 747 (1) (204 SE2d 632) (1974). The transcript in this case shows that both the prosecuting attorney and defense counsel announced ready for trial, and there is nothing in the record to show that Wilkins was prejudiced by the case being called out of order. This enumeration is without merit.

2. Wilkins next contends that the trial court erred by imposing a requirement that all voir dire questions be submitted in writing before trial. Wilkins argues that this results in the imposition of a local rule without Supreme Court approval. We find no merit to this contention. As we have held on many occasions, the control of voir dire is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review. See, e.g., *Allen v. State*, 239 Ga. App. 899, 900 (522 SE2d 502) (1999) and cits. (whether to use written or oral questions falls within the sound discretion of the trial court); *Brumelow v. State*, 239 Ga. App. 119, 120 (1) (520 SE2d 776) (1999) (order in which co-defendants allowed to

question jurors fully within court's control). The use of this procedure allowed the court to handle voir dire more efficiently and prevented this stage of the proceedings from becoming unnecessarily protracted by requiring the court to sort through redundant or improper questions during voir dire. Indeed, the need for this procedure is demonstrated by Wilkins' submission of 63 proposed voir dire questions, many of which the court found were not proper inquiries. See Division 3, below.

3. Wilkins next contends that the trial court improperly disallowed 42 of his 63 proposed voir dire questions.

> What limits a court may place on voir dire questions lie largely within the sound discretion of the court, and we will not interfere with the exercise of that discretion unless it is manifestly abused. The court did not abuse its discretion here in disallowing questions about the credibility of witnesses based on their status as police officers or otherwise. Nor did the court abuse its discretion in precluding questions concerning the burden of proof, reasonable doubt, and the presumption of innocence, for these are technical legal questions on which the court will instruct at the end of trial. Finally, because the questions should be confined to those designed to elicit possible prejudice against the accused or juror bias or interest in the outcome, the court did not manifestly abuse its discretion in disallowing the remaining disputed questions.

(Citations omitted.) *Ganas v. State*, 245 Ga. App. 645, 647-648 (2) (537 SE2d 758) (2000). *McCoy v. State*, 231 Ga. App. 703, 704 (2) (500 SE2d 611) (1998) (no abuse of discretion shown when prohibited question not phrased or designed to elicit or reveal any actual bias or prejudice against *appellant*); *Anderson v. State*, 236 Ga. App. 679, 682 (3) (513 SE2d 235) (1999) (no question should ask for a response which might amount to a prejudgment of the case).

4. Wilkins next contends that the prosecutor made an improper comment during the state's opening statement, and that curative instructions should have been given or a mistrial granted. The record shows that the prosecutor said, "and they also asked his permission to take a blood sample. He did not want to do that at that time. So they went to a judge and got a search warrant and took the blood sample that way."

Wilkins argues that this statement was an improper comment upon the invocation of his right against self-incrimination.

To reverse for improper comment by the prosecutor, we

must find one of two things: that the prosecutor's manifest intention was to comment upon the accused's failure to testify or that the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. The prosecutor's remark in the present case, taken in context, was a comment on [Wilkins'] failure to [consent to giving a blood sample] at the time of his arrest. Inasmuch as there is another equally plausible explanation for the prosecutor's statement, we cannot conclude that it was intended to comment on [Wilkins'] failure to testify or that the jury would naturally take it to be such a comment.

(Citations and punctuation omitted.) *Givens v. State*, 199 Ga. App. 709-710 (405 SE2d 898) (1991).

5. Wilkins argues that the trial court erred in admitting the conclusions of the state's DNA expert because the state failed to show that the person who drew his blood was qualified to do so and failed also to show a proper chain of custody of his blood.

Citing *Peek v. State*, 272 Ga. 169 (527 SE2d 552) (2000), Wilkins argues that the state was required to establish the credentials of the person who drew his blood by presenting a Department of Human Resources certificate or the testimony of the person who drew the blood. But *Peek* concerned the issue of blood testing pursuant to OCGA § 40-6-392 in DUI cases; it does not apply to the situation in this case, in which the defendant's blood was drawn pursuant to a search warrant for DNA testing. Thus, Wilkins' reliance on *Peek* is misplaced.

Moreover, in establishing the chain of custody, the state presented the testimony of Officer Merck, who testified that he transported Wilkins to a local hospital, he watched as a nurse drew Wilkins' blood, and he then transported the vials to the Georgia Bureau of Investigation crime lab. A forensic serologist from the GBI crime lab testified that he received the blood vials after they were delivered to the crime lab by Officer Merck, that they did not appear to have been tampered with, and that he then repackaged the vials and processed and stored them in accordance with his normal practice. Finally, the analyst who performed the DNA testing testified as to the condition of the samples when she retrieved them from storage to perform the DNA testing. This testimony, as well as other evidence presented at trial, was sufficient to adequately prove the chain of custody.

When blood samples are handled in a routine manner and nothing in the record raises a suspicion that the blood

sought to be admitted is not the blood tested, the blood is admissible and the circumstances of each case need only establish reasonable assurance of the identity of the sample. . . . Absent affirmative evidence of tampering, mere speculative doubt as to the handling of evidence while in the possession of the Georgia Crime Lab is a matter for consideration by the jury.

(Citations and punctuation omitted.) *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999).

6. Wilkins next enumerates as error the denial of his motion for directed verdict as to Count 2 of the indictment, which charged him with first degree arson in that he "did unlawfully and knowingly damage, by means of fire, the dwelling house of another, to wit: Peggy Wilkins, which dwelling house was insured against damage by Georgia Farm Bureau, without the consent of said insurer." However, because the trial court merged this count with Count 1 at sentencing, this enumeration is rendered moot. See, e.g., *Cullingham v. State*, 242 Ga. App. 499, 500 (2) (529 SE2d 199) (2000); *Carter v. State*, 237 Ga. App. 703, 710 (6) (516 SE2d 556) (1999).

7. Lastly, contrary to defendant's final enumeration of error, the evidence presented at trial was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to convict him of arson in the first degree as charged in Count 1 of the indictment.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED NOVEMBER 6, 2000 —

*Sean A. Black*, for appellant.

*Michael H. Crawford, District Attorney, William C. Akins, Assistant District Attorney*, for appellee.