41320. ATKINSON v. ATKINSON et al.
41321. CHUBB GROUP OF INSURANCE COMPANIES
v. ATKINSON et al.
41322. GENERAL ACCIDENT GROUP v. ATKINSON et al.
(326 SE2d 206)

HILL, Chief Justice.

In this multi-party suit for declaratory judgment, the trial court granted permanent equitable relief; e.g., rescinding a settlement agreement entered into in a wrongful death case. This court therefore has jurisdiction. Compare *Felton v. Chandler*, 201 Ga. 347 (4) (39 SE2d 654) (1946).

In July 1979, a divorce was granted to Thomas and Judith Atkinson, but the alimony and child custody issues were reserved. In September, their 15-year-old daughter, Tracy, was critically injured while riding as a passenger in an automobile driven by Peter Tranakos, a minor, when it and an automobile driven by James Spalding, also a minor, collided. While Tracy lay hospitalized in a coma, a consent order was entered placing her in her mother's temporary custody and requiring her father to pay her medical expenses.

On the night of the accident, Peter Tranakos was driving a car owned by his father and insured by Royal Globe Insurance Companies. James Spalding was driving a car owned by his grandfather and insured by General Accident Life & Assurance Corp., a member of the General Accident Group. Spalding's grandfather also had an excess liability policy which was issued by a member company of the Chubb Group. James Spalding was also an insured under his father's automobile policy issued by Commercial Union Insurance Company.

Following Tracy's death, her mother, Judith Atkinson, instituted

suit for wrongful death naming as defendants the two minor drivers and their fathers, as well as James Spalding's grandfather, alleging that the automobiles involved in the collision were family purpose vehicles furnished to the minors by the adult defendants.

Tracy's father, Thomas Atkinson, moved to be allowed to intervene in the wrongful death action, but his motion was denied. He then instituted a suit for the wrongful death of his daughter, but it was dismissed on motion for summary judgment. Thereafter, Judith Atkinson entered into a Release, Covenant and Indemnity Agreement with the defendants in her wrongful death action and their insurance companies. The agreement provides that in consideration of the receipt of $110,000, Judith Atkinson releases the named defendants in her wrongful death case and their insurers from any and all claims arising from the injuries to and death of Tracy Atkinson, except that she did not release any claim Thomas Atkinson might have for the expenses of Tracy's last illness, funeral and burial. Judith also agreed to indemnify and hold harmless the individual defendants and their insurers for any loss sustained by them on account of any claim for damages arising from the injuries to and death of Tracy, except for her father's claim for the expenses of her last illness, funeral and burial. A consent judgment was entered accordingly in the mother's wrongful death case, and Thomas Atkinson filed notice of appeal, appealing the denial of his motion to intervene therein.

At this point, Judith and Thomas Atkinson signed an agreement settling the unresolved alimony and property issues in their divorce action. Paragraph 11 of that agreement reads, in relevant part, as follows: "Husband did not participate in the settlement of Wife's claim, was not privy thereto, and is without knowledge of the contents thereof. Husband agrees, while not condoning said settlement, that he will not assert a claim against said proceeds. Husband reserves the right to pursue his personal appeal and to enforce his personal rights against all defendants in said Civil Action Numbered above [the wrongful death case instituted and settled by the wife]. Additionally, Husband, as father of said child, instituted his own action . . . and Husband reserves the right to proceed in said cause. Wife releases to Husband any claims or rights she has against any judgment or settlement proceeds paid after the date of this Agreement to Husband or to Husband and Wife jointly in either or both of said Civil Actions."[1]

Before the alimony settlement agreement was approved by the court, this court held in *Atkinson v. Atkinson*, 249 Ga. 247 (290 SE2d 423) (1982), that Thomas Atkinson's motion to intervene in his wife's

---

[1] It has now been stipulated that counsel for Mr. Aktinson obtained a copy of Mrs. Atkinson's Release, Covenant and Indemnity Agreement shortly after the alimony settlement agreement was executed.

wrongful death action should have been granted because the temporary custody order did not divest him of his cause of action for the wrongful death of their child.

In the final judgment in the divorce action, the trial court rejected paragraph 11 of the alimony settlement agreement, above, stating that: "[T]he court finds that this agreement has as its basic foundation the condition that the wife be allowed to keep what proceeds she now has from the wrongful death action. This is the condition upon which she agreed to give up the house and allow it to be sold without contest. Therefore, the court does not approve Item 11 of the agreement as it does not clearly express the wife's right to keep the wrongful death proceeds. Item 11 is therefore ordered stricken from the agreement. In place of Item 11, the court hereby provides that the wife shall be allowed to keep all the proceeds from the wrongful death action which she now has." No appeal was taken from this order.

After Thomas Atkinson prevailed in this court and intervened in his former wife's wrongful death action, she filed this declaratory judgment action, naming him as a defendant along with the defendants in the wrongful death case and their insurance companies. In the declaratory judgment action, the trial court made the following rulings: (1) Judith Atkinson's settlement agreement in the wrongful death action "must be set aside for mutual mistake of law and fact that she had the right and power to enter into a total settlement of such cause of action when in fact such cause of action was vested in her and Thomas H. Atkinson jointly." The consent judgment incorporating the wrongful death settlement agreement was also set aside and Judith Atkinson was ordered to repay the $110,000. (2) The court declared that paragraph 11 of the alimony settlement agreement between Judith and Thomas is still binding on the parties and is construed as an indemnity and surety agreement whereby he agreed that she should recover $110,000. He was ordered to pay her $110,000 simultaneously with her repayment of the $110,000. The court's substitution for paragraph 11 was also construed as a guarantee by Thomas that Judith will recover $110,000. (3) Judith was directed to enter a voluntary dismissal with prejudice in the joint action for the wrongful death of Tracy so that Thomas alone may proceed to recover the full value of Tracy's life. (4) Although General Accident had paid out its policy limits, upon its receipt of $35,000 of the $110,000, it will not have done so and its duties under the policy therefore have not ended; furthermore, even if the policy limits were exhausted, it still has the primary duty to provide defenses to its insureds. (5) The excess coverage provided by a member of the Chubb Group comes into play when General Accident's coverage is exhausted, and the coverage provided by Commercial Union comes into play only when the Chubb Group coverage is exhausted.

Thomas Atkinson, the Chubb Group and General Accident each appeal.

1. Mr. Atkinson enumerates as error the overruling of his motion for summary judgment, urging that declaratory judgment is not an available remedy as against him for the reason that the issues raised as to him can be resolved in the wrongful death action into which he has intervened. He urges further that it was error to stay proceedings in that wrongful death action because he is entitled to a prompt trial of his wrongful death claim.

We find that declaratory judgment does lie to determine General Accident's duty to defend, see *Shield Ins. Co. v. Hutchins*, 149 Ga. App. 742 (2) (256 SE2d 108) (1979), and thus suit for declaratory judgment naming all parties and the order staying the wrongful death action were appropriate. Moreover, in view of the requirement that Mrs. Atkinson refund the $110,000 settlement to its payors, it would be inappropriate to leave that requirement in effect without resolving Mr. Atkinson's obligation, if any, to reimburse her. Finally, this litigation has been prolonged and made complicated because Mr. Atkinson was not originally allowed to become a party to the wrongful death action.[2] Were he now to be dismissed as a party to this litigation, the wrongful death action would not be expedited and likely would be more prolonged and complicated.

The trial court did not err in denying Mr. Atkinson's motion for summary judgment or in staying the wrongful death action.

2. The next issue which must be resolved, raised by all the appellants, is whether the trial court erred in setting aside the wrongful death settlement agreement and consent judgment entered into by Judith Atkinson and all the defendants except Thomas Atkinson. We find that it did.

OCGA § 23-2-21 provides that: "(a) A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence. (b) Mistakes may be either of law or of fact. (c) The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake." We find no mistake of fact. That the cause of action for wrongful death was vested in Mr. and Mrs. Atkinson jointly is a proposition of law, not of fact.

OCGA § 23-2-22 provides that: "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when the mistake operates as a gross injustice to one and gives an unconscionable advantage to the other, may be relieved in equity." It

---

[2] The denial of his motion to intervene should have been made subject to and appealed under OCGA § 9-11-54 (b) prior to settlement of the wrongful death and divorce cases.

has not been shown that Mrs. Atkinson has suffered a gross injustice or that the wrongful death defendants and their insurers have an unconscionable advantage.

OCGA § 23-2-27 provides that: "Mere ignorance of the law on the part of the party himself, where the facts are all known and there is no misplaced confidence and no artifice, deception, or fraudulent practice is used by the other party either to induce the mistake of law or to prevent its correction, shall not authorize the intervention of equity." Judith Atkinson's "mistake" if any, was in signing a release that included an indemnity agreement — but she did so in return for valuable consideration and after she was on notice by his motion to intervene that her ex-husband had asserted in a legal and timely manner that he had a cause of action which could, if he recovered upon it, trigger the indemnity provisions of the settlement agreement and render her liable under it. " 'The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief.' . . . This case furnishes another instance wherein the hindsight is better than the foresight, for which law or equity affords no remedy. The law does not restore mere blindness or cure bad sight. The authorities are numerous that mistake of a past or present fact may warrant equitable relief, but a mistake in opinion or mental conclusion as to an uncertain future event is not ground for relief." *Callan Court Co. v. C & S Nat. Bank*, 184 Ga. 87, 130 (190 SE 831) (1937).

Moreover, Judith Atkinson did not establish that rescission of the settlement agreement would not prejudice the other parties to it. OCGA § 23-2-32 (b). We therefore conclude that the trial court erred in ordering rescission of the wrongful death settlement agreement. It follows that the trial court erred in setting aside the consent judgment incorporating that settlement agreement, in ordering Judith Atkinson to refund the $110,000, and in ordering her former husband to reimburse her that amount simultaneously.

3. The next issue to be resolved is the effect, if any, of paragraph 11 of the alimony settlement agreement. We find that that paragraph was stricken by the divorce court and has no effect. Assuming without deciding that an alimony settlement agreement approved by a court may be enforced either as a judgment or a contract between the parties, we find that a provision of an alimony settlement agreement disapproved by the court cannot be enforced as a contract, because the doctrine of res judicata forbids enforcement of such provision.

Therefore, Thomas Atkinson's right to pursue his wrongful death claim comes not from the alimony settlement agreement but from the law, if at all, and he acquired none of his former wife's claims or rights against any judgment or settlement obtained by him on his

wrongful death claim. The court below therefore erred in giving any effect to the stricken paragraph 11 of the alimony settlement agreement.

4. We next consider the effect of the divorce court's order regarding paragraph 11. In that order, the court decreed that "the wife shall be allowed to keep all the proceeds [$110,000] from the wrongful death action. . . ." Reading this provision in its context, we find that this decree was more than a mere allocation of property; it is prospective, and it prohibits the former husband from obtaining a judgment or settlement on his wrongful death claim which results in the wife losing any part of the $110,000.

5. In sum, we find that Thomas Atkinson is entitled to pursue his claim for the wrongful death of his daughter against the defendants in that action, to seek a verdict for the full value of her life, and to recover one-half of that amount from the defendants liable therefor or their insurers. *Southeastern Greyhound Lines v. Wells*, 204 Ga. 814 (51 SE2d 569) (1949). Those defendants and their insurers would then be entitled to recover such sums from Judith Atkinson pursuant to her indemnification agreement. She in turn would be entitled to reimbursement of such sums from her former husband pursuant to the alimony decree, at least up to the sum of $110,000. If it appears that these parties have created a merry-go-round, it should be noted that each boarded it independently.

6. The final two questions demanding resolution are those relating to insurance coverage. The first of these is whether General Accident still has a duty to defend even though it has paid out its policy limits. General Accident's policy provides: "Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted."

General Accident relies on *Liberty Mutual Ins. Co. v. Mead Corp.*, 219 Ga. 6 (131 SE2d 534) (1963). In that case, one of Mead's vehicles, insured by Liberty Mutual up to $100,000, was involved in a collision which resulted in four deaths. Liberty settled two of the claims, paying $100,000, with Mead contributing $60,000. Thereafter Liberty refused to defend the remaining claims and Mead sued Liberty for its attorney fees and expenses in defending such claims. The court construed the insurance policy to provide, as here, that the duty to defend terminated upon the insurer's payment of the policy limits. The court went on, however, to consider whether Liberty had performed its duty to defend (in good faith), noting the following: (1) The insured consented to and contributed to the settlement of the first two claims; (2) the insurer did not elect to pay the policy limit at the outset and thereby cast the burden of defense upon the insured from the beginning (i.e., the insurer actually defended and resolved two of the claims); and (3) the insurer did not elect to defend rather

than settle and then abandon the defense of the claim in mid-course to the prejudice of the insured.

Pretermitting whether the insured's consent is required or was given in this case, we find the third of these considerations applicable here; the insurer has failed to show that it has not abandoned the defense of the claim in mid-course to the prejudice of the insured. The wrongful death of Tracy Atkinson gave rise to a single claim, jointly in the child's parents, for the full value of the life of the child. *Atkinson v. Atkinson,* supra; Ga. L. 1979, pp. 466, 494. Here, after the father sought unsuccessfully to intervene in the wrongful death action instituted by the mother, the insurer settled with the mother, paying her the full value of the life as agreed to by the parties. Yet, that wrongful death action has not been resolved; the insured remains liable for one-half the full value of the life of the deceased. An insurer's duty to defend its insured is not satisfied when the insurer settles by paying its policy limits to the wrong party. The insurer has failed to show that the insured has not been prejudiced by the insurer's failure to resolve the one wrongful death claim in its entirety.[3] Moreover, having prepared the defense of the mother's suit, General Accident is in the best position to defend the remainder of the claim, the facts as to liability and damages being the same.

The trial court did not err in denying General Accident's motion for summary judgment and therefore did not err in holding that General Accident still has the duty to defend the suit for the wrongful death of Tracy Atkinson.

7. The final question is which insurer is next in line as to payment of damages. (General Accident has paid its policy limits and no one contends it is liable for payment of additional damages.) Chubb Group, excess insurer for James Spalding and his grandfather, contends that Commercial Union, insurer of James Spalding's father, is next in line. Commercial Union contends that the trial court was correct in finding Chubb Group to be next in line. We find this to be an oversimplification, although the more difficult problem is not resolved by simplifying it. Chubb Group is next in line as to James Spalding's grandfather, and Commercial Union is next in line as to his father, if either or both of them has any personal liability.

The question remains as to which insurer is next in line as to James Spalding's liability, if any. As might be expected, the policy of Chubb Group as well as the policy of Commercial Union declares that it is excess to any other policy of insurance. The Commercial Union policy taken out by James Spalding's father names James as an in-

---

[3] The excess carrier is entitled to assert prejudice to the insured as a third-party beneficiary of the insurance policy issued by General Accident. Appleman, Insurance Law and Practice (Berdal ed.), § 4682, pp. 32, 33 (1979).

sured but provides that "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."

The Chubb Group policy issued to James Spalding's grandfather is denominated a "Personal Excess Liability Policy." It states that "As the name suggests, the policy provides excess liability — it comes into play after all your primary liability insurance has been used up." Its limit of liability is $1,000,000 for "Each Occurrence in excess of the Retained Limit as defined herein." The policy provides that "The company agrees to pay on behalf of the insured ultimate net loss, in excess of the retained limit, which the insured shall become legally obligated to pay as damages because of personal injury or property damage." The phrase "retained limit" is defined as "the limit of liability of the primary insurance as it is shown in the Schedule hereof, or the actual limits of liability of any applicable primary or other insurance, whichever is greater." The policy further provides that: "The insurance provided by this policy shall be in excess of, and shall not contribute with, any other insurance . . . available to the named insured or any other person or organization falling within the definition of insured in this policy, not only under any policy enumerated in the Schedule, but also under any other insurance available to the insured, and this insurance shall not apply until all such insurance is exhausted."

The prevailing rule as stated in Appleman, Insurance Law and Practice, § 4909.85 (1981), is that: "[U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." We are persuaded by the authorities cited in this treatise that this is the better rule and hereby adopt it in Georgia. The Commercial Union policy is a primary policy in that it was written to provide primary coverage. Only when it is called upon where a vehicle not owned by the insured is involved in an accident does it become excess. The Chubb Group policy, on the other hand, is an excess policy; i.e., it was not written to provide primary coverage as to automobile accidents. Applying the prevailing rule, the trial court erred in holding that the Chubb Group policy must be exhausted before the Commercial Union policy applies.

*Judgment affirmed in part and reversed in part in Case No. 41320; judgment reversed in Case No. 41321; judgment affirmed in Case No. 41322. All the Justices concur, except Smith, J., who dissents as to Divisions 2 and 5 and to the judgment in Case No. 41320.*

DECIDED FEBRUARY 19, 1985 —
REHEARING DENIED MARCH 14, 1985.

*Hurt, Richardson, Garner, Todd & Cadenhead, A. Paul Cadenhead, Brent J. Kaplan,* for appellant (case no. 41320).

*Long, Weinberg, Ansley & Wheeler, Palmer H. Ansley, Joseph W. Watkins,* for appellant (case no. 41321).

*Swift, Currie, McGhee & Hiers, James B. Hiers, Jr., Michael H. Schroder,* for appellant (case no. 41322).

*Swift, Currie, McGhee & Hiers, Michael H. Schroder, Neely & Player, Randall H. Davis, Lokey & Bowden, Glenn Frick, Meals & Parks, Robert N. Meals, Larry H. Chesin,* for appellees.