## A94A1981. GIBSON v. PREFERRED RISK MUTUAL INSURANCE COMPANY.
(456 SE2d 248)

SMITH, Judge.

Appellant Mary Y. Gibson was involved in a traffic collision. Several persons have claimed that they suffered personal injury resulting from the incident and that Gibson was responsible for those injuries. At the time of the incident, Gibson held an automobile liability policy from appellee Preferred Risk Mutual Insurance Company providing bodily injury coverage to the extent of $25,000 per person and $50,000 per occurrence. It is undisputed that the insurer settled and paid damages in good faith to two claimants in the amount of $25,000 each, thereby exhausting the policy's limit of liability per occurrence.

Much later, the insurer filed this declaratory judgment action on the issue of whether it is obligated to continue defending Gibson in a separate action filed by Rhonda and Wayne Holder[1] arising out of the same incident. Gibson answered and counterclaimed against the insurer, alleging legal malpractice for the failure of insurer's counsel to file a counterclaim against Rhonda Holder. The trial court granted the insurer's motion for summary judgment, and Gibson appeals.

The relevant policy provision reads as follows: "We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident. . . . We will

---

[1] The Holders were parties in the action below, but do not join in this appeal.

settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for bodily injury or property damages not covered under this policy." (Punctuation omitted.)

Gibson contends the insurer has a continuing duty to defend her in the case brought by the Holders for two reasons. First, she notes that the insurer exhausted its policy limits by settling two claims in May 1990, yet undertook to represent her interests by filing an answer on her behalf in the action brought by the Holders on May 7, 1992. Second, Gibson argues that in making that initial filing on her behalf, the attorney hired by the insurer to defend her was guilty of malpractice because he did not then file a counterclaim based on the theory that plaintiff Rhonda Holder had the "last clear chance" to avoid the collision.

The insurer received a letter from Gibson's son on March 10, 1992. Gibson's son explained he was acting as his elderly mother's "intermediary." The letter informed the insurer that enclosed was a complaint that had been filed against his mother for the accident occurring two years earlier, and that "[w]e are turning this over to you for your handling."

The insurer's initial response, dated March 13, 1992, reveals no apparent awareness of the exhaustion of policy coverage caused almost two years earlier by the insurer's settlement with other claimants. Its response disclosed only that the Holders' claims far exceeded the policy limits; that there was no coverage for the Holders' prayers for punitive damages; that an agreement had been reached with plaintiffs' counsel that an answer and appearance were not immediately due; that settlement negotiations were being undertaken; and that "in the event that we are unable to affect [sic] a settlement and it does become necessary to actively defend this case, we will immediately advise you [of] the name of the counsel we have retained on your behalf to defend this matter."

The parties do not appear to dispute that because the policy's limits were exhausted almost two years prior to the filing of the Holders' complaint, the insurer was under no pre-existing contractual duty to defend Gibson in the action brought by the Holders. Moreover, the insurer could not be heard to argue that it was unaware of the fact that it had already exhausted the policy limits for the collision. Nevertheless, the insurer's response of March 13, 1992, affirmatively reflects that settlement negotiations were already underway and that Preferred Risk intended to undertake her initial defense, if necessary.

On April 29, 1992, the insurer provided Gibson with a "notice of reservation of rights." An answer was filed on May 7, 1992, under that

reservation of rights. The present action for declaratory relief was filed May 14, 1992.

This case is unusual because Preferred Risk knew or should have known that it had already satisfied its policy obligations before Gibson turned the Holders' complaint over to it. Therefore it could be argued that this case should be considered under the rule that "if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage." *Jones v. Ga. Cas. &c. Co.*, 89 Ga. App. 181, 185 (78 SE2d 861) (1953). Gibson, however, is not arguing that Preferred Risk should provide coverage to her, only a defense. We therefore need not engage in a theoretical discussion of when a "defense" to the Holders' action was initiated and whether that defense was initiated before or after the reservation of rights notice was provided to Gibson. See generally *Prescott's Altama Datsun v. Monarch Ins. Co. of Ohio*, 170 Ga. App. 545, 548-551 (317 SE2d 845) (1984) (McMurray, C. J., dissenting).

Gibson instead argues only that she is entitled to a defense under *Atkinson v. Atkinson*, 254 Ga. 70, 75-76 (6) (326 SE2d 206) (1985), a case distinguishable from the present case in that the policy limits in *Atkinson* were paid to the wrong party. It would therefore appear that, unlike the present case, the insurer in *Atkinson* never satisfied its *contractual* duty to defend its insured in the first instance. However, we apply the reasoning of *Atkinson* to this case as standing for the proposition that an insurer may not under the circumstances presented "abandon the defense of the claim in mid-course to the prejudice of the insured." *Atkinson*, supra at 76. This reading is entirely consistent with the rule regarding gratuitous undertakings generally. See, e.g., *Stelts v. Epperson*, 201 Ga. App. 405, 407 (411 SE2d 281) (1991). ("[O]ne who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon. [Cit.]") The question before us is therefore whether Gibson has shown any prejudice to her defense that would result directly from Preferred Risk's withdrawal at this point in the litigation.

On this point, Gibson argues only that her defense was prejudiced by the failure of the insurer's attorney to file a compulsory counterclaim against the Holders. At most, however, Gibson is alleg-

ing only that the insurer's attorney caused her to lose a right of action she may have once had; it does not follow that her *defense* to the *Holders'* claims has been in any way prejudiced. Any harm allegedly done to Gibson's interests has already accrued, and there is nothing further the insurer can do to lessen that alleged harm other than compensate Gibson for the loss. This does not serve as a basis for imposing upon Preferred Risk a continuing duty to defend the remaining claims against Gibson.

It is true that an insurer may be estopped to deny *coverage* once it has undertaken to defend a claim and performs that undertaking negligently. See *Jones v. Ga. Cas. &c. Co.*, supra. The continuing duty to *defend* in such a case, however, is incidental to the fact that the insurer is estopped to deny coverage. No issue of coverage is presented in this case. Therefore, in the absence of any suggestion that the insurer can better defend Gibson than an attorney independently retained by her, we cannot say the trial court erred in granting Preferred Risk's motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Pope, P. J., concur.*

DECIDED MARCH 8, 1995 —
RECONSIDERATION DENIED MARCH 28, 1995 — 

*Wilson, Strickland & Benson, Warner R. Wilson, Jr., Carolyn V. Jordan, Mary M. Brockington, Sara L. Doyle,* for appellant.

*Zimmerman & Associates, Keith F. Brandon, Croy, Harris & Hammond, A. Cullen Hammond, Malcolm S. Murray & Associates, William D. Strickland,* for appellee.