A96A0046. CINCINNATI INSURANCE COMPANY v. ST. PAUL FIRE & MARINE INSURANCE COMPANY.
(474 SE2d 78)

BIRDSONG, Presiding Judge.

St. Paul Fire & Marine Insurance Company seeks indemnification and/or contribution from Cincinnati Insurance Company for sums expended by St. Paul in the defense and settlement of a lawsuit against Dr. Muhanna.

Cincinnati issued a homeowner's insurance policy to Dr. Muhanna and subsequently sent an insurance policy renewal bill to him. The policy contained an auto endorsement which included primary coverage of $300,000 per occurrence on an Oldsmobile Dr. Muhanna owned. On the date on which coverage under the renewal policy was to begin, Dr. Muhanna applied for, and St. Paul issued, an insurance policy which also included $300,000 in primary coverage on the Oldsmobile.

Several days later, Dr. Muhanna's wife was involved in an automobile accident with Weatherford. She was driving the Oldsmobile, which Dr. Muhanna had furnished to her for a family purpose. Afterwards, and within the grace period provided for by the terms of the policy for payment of the insurance premium, Cincinnati received payment from Dr. Muhanna for renewal coverage on the auto endorsement. When Cincinnati was notified of the St. Paul policy, it considered its policy had terminated and advised Dr. Muhanna that his premium was being refunded.

Prior to the incident giving rise to this suit, Cincinnati, in addition to its automobile endorsement provision in the homeowner's policy, also issued a personal umbrella liability endorsement to Dr. Muhanna with policy limits of $1,000,000.

Weatherford and his wife sued Dr. and Mrs. Muhanna for damages resulting from the collision. Cincinnati refused to participate in the defense or settlement of the suit. St. Paul assumed the defense, paid $153,550 in settlement of all claims, and incurred $3,608.90 in defense costs.

In this action, Cincinnati and St. Paul filed cross-motions for summary judgment. Cincinnati asserted that its coverage terminated on the effective date of the St. Paul policy pursuant to an automatic termination clause in its policy and subsection (g) of OCGA § 33-24-45. St. Paul countered that subsection (g) is inapplicable and that Cincinnati either is liable for all the costs or must share on a pro rata basis. The trial court granted St. Paul's motion for summary judgment and denied Cincinnati's motion, ruling that Cincinnati's policy was in effect on the date of the collision and that Cincinnati is liable for all settlement and defense costs. *Held*:

1. Cincinnati had no liability because its policy coverage of Dr. Muhanna's Oldsmobile terminated by its own terms on the effective date of the St. Paul insurance policy.

In *Ector v. American Liberty Ins. Co.*, 138 Ga. App. 519, 521 (1) (226 SE2d 788), this Court held that "the procurement of new insurance as an intended substitution for an existing policy does not constitute an effective cancellation of the policy unless the terms of the policy specifically provide for cancellation in this manner or the parties have otherwise mutually agreed upon this method of cancellation." The Cincinnati policy in its effect contains just such terms: "If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance." This provision is consistent with Georgia law: "Notwithstanding the failure of an insurer to comply with this Code section, termination of any *coverage* under the policy either by cancellation or nonrenewal shall be effective on the effective date of any other policy providing similar coverage on the same motor vehicle or any replacement of coverage." (Emphasis supplied.) OCGA § 33-24-45 (g).

The contention that OCGA § 33-24-45 (g) is not applicable because neither Cincinnati nor Dr. Muhanna attempted to effect a termination or nonrenewal is not supported by the record or our construction of an allegedly similar Code section (former OCGA § 33-34-11 (a) (1)). Under the terms of this policy, Dr. Muhanna effected a termination of the applicable coverage of the policy when he procured the St. Paul coverage on his car. Dr. Muhanna had a legal duty to

read his policy (*McCullohs Svc. Station v. Wilkes*, 183 Ga. App. 687, 690 (359 SE2d 745)), and therefore he is presumed to know the policy coverage would terminate when he obtained similar coverage on his car. Thus, when he procured the St. Paul policy to be effective at the conclusion of the Cincinnati policy, he effected a nonrenewal or termination of that portion of the Cincinnati *policy* pertaining to the coverage of his Oldsmobile. Dr. Muhanna may not have intended to be affected by the result of this provision when he purchased the policy, but by his acceptance and retention of the policy with this provision, he became bound by Cincinnati's clear and unequivocal intent. Further, the policy provision at issue is more than a mere escape clause; rather, it unequivocally conveys on its face the intent of Cincinnati to provide for such partial policy *termination* in the event other insurance was obtained on the covered vehicle. "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." OCGA § 13-2-4; *Borders v. Global Ins. Co.*, 208 Ga. App. 480, 483 (2) (430 SE2d 854). In any event, attempted compliance with OCGA § 33-24-45 was not required. See *Walter v. Allstate Ins. Co.*, 206 Ga. App. 186, 187 (424 SE2d 866).

Cincinnati is authorized to fix the terms of its policy as it wishes as long as the terms are not contrary to law (Ga. Const. of 1983, Art. I, Sec. I, Par. X), and when the terms of the policy are clear and unambiguous, the courts cannot deviate from the terms of the policy to reach a result not intended by the policy. *Hulstzman v. State Farm Fire &c. Co.*, 188 Ga. App. 12, 13 (372 SE2d 9). The terms of this policy are plain and obvious, and must be given their literal meaning. *United States Fire Ins. Co. v. Capital Ford &c.*, 257 Ga. 77, 79 (355 SE2d 428). Therefore, we find that the portion of the Cincinnati policy providing coverage of the Oldsmobile was terminated in accordance with its terms and our law.

2. Because we find that the pertinent portion of the Cincinnati policy was terminated before any liability accrued, no issue is presented on whether Cincinnati had some obligation to share in St. Paul's settlement costs or litigation expenses.

3. The personal umbrella liability endorsement issued by Cincinnati provides: "*We* will pay on behalf of anyone covered by this endorsement: 1. Excess insurance over and above the amounts provided for in *basic policies,* or 2. Damages arising out of claims or legal actions anywhere in the world covered by this endorsement which are either excluded or not covered under *your basic policies.*" In *Atkinson v. Atkinson*, 254 Ga. 70, 77 (7) (326 SE2d 206), the Supreme Court held that: " '[u]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage,

excess provisions arising in regular policies in any manner, or escape clauses.'" (Citation omitted.) The Cincinnati umbrella liability endorsement provides for only excess coverage regarding any claims covered under the basic St. Paul insurance policy.

In view of the above holdings, we find the trial court erred both in granting summary judgment to appellee and in denying summary judgment to appellant. Judgment is reversed and the case remanded with direction that the trial court enter summary judgment on behalf of appellant Cincinnati.

*Judgment reversed and case remanded with direction. Beasley, C. J., McMurray, P. J., Pope, P. J., Andrews, Johnson, Blackburn, Smith and Ruffin, JJ., concur.*

DECIDED JUNE 26, 1996 —
RECONSIDERATION DENIED JULY 11, 1996 — 

*Berlon & Timmel, James T. Perry*, for appellant.
*Tittsworth, Grabbe & Spillers, Jennie E. Rogers*, for appellee.