### 45846.   TANT v. THE STATE.
### 45847.   BOATNER v. THE STATE.

PANNELL, Judge. The appellants were charged with illegal possession of drugs and, upon conviction, appealed to the Supreme Court of Georgia, which court transferred the case to this court for review and decision. *Held:*

1. No constitutional questions relating to the validity of the Act under which appellants were convicted were properly raised in the court below (see *Tant v. State,* 226 Ga. 761 (177 SE2d 484)), and will therefore not be passed upon by this court on appeal. *Bourn v. Herring,* 225 Ga. 67 (166 SE2d 89); *Harper v. Burgess,* 225 Ga. 420 (169 SE2d 297).

2. The police officer, undercover agent here, did nothing to entice or trick or persuade the defendants to commit the crime of which they were charged and convicted within the ruling in

Mapp v. Ohio, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081), but, on the contrary, the police officer was invited to attend the drug smoking party; nor was such officer, because he also held and smoked the pipe containing the drug, an accomplice within the meaning of the rule that a conviction of felony cannot rest upon the uncorroborated testimony of an accomplice.

3. (a) The evidence as to the prejudice and bias in the community related to a very small number of people and was based primarily upon news publicity, most of which was composed of articles written by one of the defendants in a college newspaper, a local newspaper item with the pictures of the defendants and a narrative of their arrest. The facts stated in the latter article were proven without contradiction on the trial. The evidence failed to show a "probability of unfairness" or a "reasonable likelihood" that a fair trial could not be obtained as applied in the ruling of Sheppard v. Maxwell, 384 U. S. 333 (86 SC 1507, 16 LE2d 600). Nor does the voir dire examination of jurors, some of whom had read such articles, show anything to the contrary.

(b) Nor did the trial court abuse its discretion in permitting a juror to serve who had read the local newspaper articles and had seen the pictures where such juror said that he "believed" he could serve without prejudice and could render a just verdict under the evidence.

4. The acceptance and holding of the pipe containing the drug for the purpose of smoking it, and doing so, is sufficient possession of the drug to authorize a conviction of the charge made, and it follows that the testimony of the officer that the defendants, when they took the pipe with the drug in it, took "possession," was not a conclusion of the witness; nor would the requested charge to the jury that the State had failed to prove possession of the drug have been a proper one. The ruling in *Graham v. State,* 150 Ga. 411 (104 SE 248) that the proof of drunkenness is not proof of guilty possession of alcoholic beverages when it was no crime to consume such beverages is not controlling here. See in this connection *Pierce v. State,* 43 Ga. App. 435, 437 (159 SE 125) commenting upon the *Graham* case and the facts therein and *Dukes v. State,* 90 Ga. App. 50 (81 SE2d 864),

in which it was stated that "the gist of the ruling in [the *Graham* case] is to the effect that one cannot be convicted of possessing and controlling intoxicating whiskey on evidence that he was seen intoxicated."

5. Enumerations of error not herein dealt with and not argued in the briefs of counsel will be considered as abandoned.

*Judgments affirmed. Bell, C. J., Jordan, P. J., Quillian, Whitman, and Evans, JJ., concur. Hall, P. J., Eberhardt and Deen, JJ., dissent.*

SUBMITTED JANUARY 4, 1971—DECIDED APRIL 16, 1971—
REHEARING DENIED MAY 10, 1971.

*Albert M. Horn,* for appellants.

*E. W. Fleming, District Attorney, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, William R. Childers, Jr., Assistant Attorneys General,* for appellee.

DEEN, Judge, dissenting. The State's witness, a narcotics agent, came to the apartment occupied by Tant and Boatner at Boatner's request. Boatner invited the witness to a back room where there was a girl, another man, Tant and himself. The defendants were students at a local college. A pipe containing a small amount of a marijuana derivative was passed around, each person taking a puff, and the empty pipe returned to the girl who refilled it from a vial in her pocketbook, exhausting the container of its contents. She then lit it and passed it around. Tant, Boatner and the witness put the pipe to their lips. The witness testified that he drew smoke into his mouth, he did not inhale it, he did not know whether Tant and Boatner inhaled it or not, he forthwith arrested the occupants because "the evidence was about to be exhausted," and retrieved some residue scrapings from the pipe later identified as hashish. The girl admitted sole ownership of the marijuana derivative. Everybody denied ownership of the pipe or knowing to whom it belonged; it was described as just lying around, as sort of communal.

The operative statute is *Code Ann.* § 79A-803 which forbids any person to "manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound" any narcotic drug ex-

cept as authorized within the statute. "Use" of the drug is not a penal offense. The question is whether receiving a lit pipe momentarily to take one or two puffs is possession or control of the drug within the meaning of the statute. The statute is the same in form as *Code* § 58-201 which forbids any person to "have, control or possess. . . whether intended for personal use or otherwise" intoxicating liquors. Under the latter statute in *Mikell v. State,* 94 Ga. App. 627 (95 SE2d 691) the conviction of a defendant for possession and control was reversed where evidence showed that while the defendant was eating supper another person came in and offered him a drink and he accepted, there being no evidence that the liquor belonged to the defendant. The case was held controlled by *Graham v. State,* 150 Ga. 412, 413 (104 SE 248) where it was held that "whiskey may be . . . taken from the hand of another merely for the purpose of drinking the whiskey. In the circumstances last supposed, the act of taking whiskey from the hand of another is merely incident to the act of drinking the whiskey, and can in no proper sense be held to be within the inhibition of a criminal statute which declares that it shall be unlawful 'for any . . . person or individual . . . to have, control or possess, in this State, any of said enumerated liquors or beverages.' The legislative intent and purpose is manifested when the words 'have,' 'possess,' and 'control' are used in association." Under these cases a verdict of reversal is demanded.

I am authorized to state that Presiding Judge Hall and Judge Eberhardt concur in this dissent.

HALL, Presiding Judge, dissenting. This case graphically illustrates the malfunction of our present system of two separate appellate courts having jurisdiction of criminal cases. The result has been confusing jurisdictional problems (which is the proper appellate court?), conflicting appellate court decisions and delay in and by the two courts.

As pointed out in Judge Deen's dissent, the Supreme Court in its opinion in *Graham v. State,* 150 Ga. 411, 412 (104 SE 248) stated that "the act of taking whiskey [marijuana] from the hand of another" for the purpose of drinking (smoking) the whiskey (marijuana) "is merely incident to the act of drinking [smoking] the whiskey [marijuana], and can in no proper sense be held to be

within the inhibition of a criminal statute which declares that it shall be unlawful" to control or possess whiskey or marijuana.

In *Pierce v. State,* 43 Ga. App. 435 (159 SE 125), and *Dukes v. State,* 90 Ga. App. 50 (81 SE2d 864), this court refused to follow the above quoted reasoning found in the Supreme Court's *Graham* opinion. In *Mikell v. State,* 94 Ga. App. 627 (95 SE2d 691), this court refused to follow its opinions in *Pierce* and *Dukes* and adopted the reasoning in the *Graham* decision. Now a majority of this court goes back to the *Pierce* and *Dukes* opinions.

In theory, the defendant might still have some form of relief in seeking certiorari in our Supreme Court. In practice, he has no remedy because he has already served over half of his two-year sentence (in jail without bond) and will probably serve it all before a final decision.[1] The history of this appeal is as follows: He was convicted on February 16, 1970, and sentenced on April 15, 1970. Notice of appeal to the Supreme Court from the judgment of conviction was filed on May 15, 1970. On October 8, 1970, the Supreme Court transferred the appeal to this court on the basis that this court rather than the Supreme court had jurisdiction (Justice Felton dissenting). *Tant v. State,* 226 Ga. 761 (177 SE2d 484). Six months later we affirm the judgment.

This case involves possible conflicts between decisions of our two appellate courts on the question of substantive criminal law. On conflicts as to criminal procedure and the ramifications of these conflicts see *Parham v. State,* 120 Ga. App. 723 (171 SE2d 911); *Thornton v. State,* 226 Ga. 837 (178 SE2d 193); *Pritchard v. State,* 122 Ga. App. 780 (178 SE2d 808); and *Merneigh v. State,* 123 Ga. App. 485.

All of this raises the question of whether the time has come for

[1]The average time in 1970 between a judgment in this court (criminal appeal) and the denial of certiorari by the Supreme Court was two and one-half months. The average time in 1970 between a judgment in this court (civil appeal) and a judgment of the Supreme Court upon certiorari was seven and one-half months. In 1970 certiorari was granted in only one criminal case and it was subsequently dismissed.

us to re-examine our appellate structure and jurisdiction. Should we have only one appellate court with separate divisions (civil and criminal) similar to the English Court of Appeal? An early English jurist said that the creation of one court of appeal may be considered a reasonable precaution but that two suggests panic. Even laying aside the additional delay inherent in two appellate courts, "The folk wisdom that two heads are better than one has always been tempered by the observation that too many cooks spoil the broth." Lilly and Scalia, "Appellate Justice: A Crisis in Virginia," 57 Virginia Law Rev. 3, 27 (1971). See also "The Case For a Two-Level State Court System," 50 Jud. 185 (Feb. 1967). Should we have a separate court of last resort for criminal appeals as in Texas and Oklahoma? Texas Constitution, Art. 5, §§ 1, 5; Oklahoma Constitution, Art. 7, § 4. Or should all criminal appeals go directly to our highest court as is true in Louisiana? Louisiana Constitution, Art. 7, § 11. Any of these proposals would aid in meeting the problems of delay, uncertain jurisdiction and conflicting decisions inherent in allowing appellate review in two separate courts.