### 37980. GOVERNMENT EMPLOYEES INSURANCE COMPANY v. GINGOLD.

SMITH, Justice.

We granted GEICO's application for certiorari in order to review the Court of Appeals' holding in *Gingold v. Government Employees Ins. Co.,* 159 Ga. App. 410 (283 SE2d 614) (1981), that genuine issues of material fact exist in respondent Gingold's excess liability action. The trial court had reached a contrary conclusion.

The record establishes that on April 15, 1974, the insured, James Stephen Johnston, was in an automobile accident with Kay Woody, who sustained substantial injuries. See *Johnston v. Woody,* 148 Ga. App. 152 (250 SE2d 873) (1978). Suit was filed three weeks later and attorneys were employed by GEICO to defend the action. The insured had only $10,000 of liability coverage, and by the autumn of 1974 settlement negotiations were underway. Although GEICO was willing to pay the policy limits in exchange for a release, Ms. Woody's attorney advised against her executing one, since Ford Motor Company was going to be sued and the attorney believed a release would preclude such an action. The attorney offered a covenant not to sue in exchange for the policy limits. Attorneys for GEICO and Johnston, however, rejected this offer because a covenant not to sue would not protect the insured if he were held liable for contribution or indemnity in the event a recovery was had against Ford. The attorneys indicated that they would be willing to accept a covenant not to sue containing an indemnity clause. This offer was rejected by Ms. Woody's attorney, ostensibly because the proposed indemnity clause included an attorney fees provision. No further proposals were made by either side. GEICO was informed by Ms. Woody's attorney that, if Ford were added as a party in the suit against Johnston (rather than being sued in a separate action), all possibility of settlement was over because jurisdiction over Ford would thereby be

lost. On February 19, 1975, Ford was added as a defendant in the suit against Johnston.

Throughout this period, Johnston's attorneys repeatedly requested that Johnston get in touch with them to discuss the pending action, but he failed to do so. As he states in his affidavit: "After the lawsuit was served upon me, I received numerous letters and telephone call messages from the law firm of Dunaway, Haas & Broome requesting that I contact them about this lawsuit, but I did not see fit to respond to the letters or return the telephone calls." In December, 1974, as serious negotiations were just underway, Johnston went AWOL from the Marine Corps. Thereafter, he spoke with his attorney "for the first time on or about June 9, 1975."

Ultimately, Ford was found not liable and Johnston was found liable in the amount of $121,000. Thus, in hindsight, acceptance of the covenant not to sue that did not include an indemnity clause would have served the interests of the insured just as well as a covenant containing such a clause. It is this fact which resulted in the present lawsuit.

Respondent, however, is not the insured but his trustee in bankruptcy. (The bankrupt estate is shown as having assets of $100 and liabilities equal to the amount of the judgment obtained against the insured, $121,000.) The trustee is represented in this action by the law firm of the attorney who previously had represented Ms. Woody in her damage suit. The ultimate objective, it is clear, is to obtain assets for the bankrupt estate by which the judgment against Johnston may be satisfied. For reasons which follow, this effort cannot succeed, and the judgment of the Court of Appeals must be reversed.

1. "Occasionally, the facts [in an excess liability case] have presented an issue as to whether or not the insurer actually had an opportunity to make an effective compromise." 44 AmJur2d Insurance 410, § 1531; see Young v. American Casualty Co., 416 F2d 906 (2d Cir. 1969) cert. dismissed, 396 U. S. 997 (90 SC 580, 24 LE2d 490) (1970); Hadenfeldt v. State Farm Mutual Auto. Ins. Co., 195 Neb. 578 (239 NW2d 499) (1976). This is such a case.

As indicated above, the evidence shows that settlement negotiations began in earnest in December, 1974. By mid-February, 1975, the possibility of settlement had ended due to actions taken by Ms. Woody's attorney. It was understood by all parties concerned that any settlement would require the consent of the insured.

We thus turn to a determinative question: was the insured capable of being located? If he was not, GEICO, of course, cannot be liable for any failure to reach a settlement. Respondent argues that there is conflicting evidence on this question because of the following

statements contained in a letter sent from attorneys for GEICO and Johnston to Ms. Woody's attorney: ". . . I am returning the original covenant not to sue . . . and a [counterproposal] . . . I believe the covenant [containing an indemnity clause] is in keeping with the intent of both parties and will in no way affect your proposed action against Ford Motor Company.

"Please check out the attached form and advise as quickly as possible *in order that we can run down James Stephen Johnston and have his signature affixed.*" (Emphasis supplied.)

We cannot agree with respondent's conclusion. The evidence shows unequivocally that, notwithstanding the wishes of Johnston's and GEICO's attorneys, Johnston was nowhere to be found. The attorneys had repeatedly tried to get in touch with him and they repeatedly failed. By the time Johnston finally showed up, the opportunity for settlement had passed. He admitted: "I intentionally concealed my whereabouts because the Marine Corps was looking for me. I did not advise my attorneys nor my parents of my whereabouts during the period of time that I was AWOL as I did not want anyone to know where I was."

Because no settlement was in fact possible, respondent's excess liability action, which is premised on the possibility of settlement, was properly disposed of on summary judgment.

2. There is a second and equally compelling reason why summary judgment in favor of GEICO is appropriate, regardless of whether settlement could have been effected without the consent of the insured.

"It is no longer open to question in this State that the claim of an insured under an automobile liability policy for damages on account of the bad faith tortious refusal of the insurer to settle a liability claim against him within the policy limits resulting in damage to him in the form of a judgment in excess of the policy limits being returned against him is a legitimate charge against the insurer upon which recovery may be had by the insured. [Cits.]" *Shaw v. Caldwell,* 229 Ga. 87, 91 (189 SE2d 684) (1972). It has also been held that " 'the insurer must accord the interest of its insured the same faithful consideration it gives its own interests.' Cowden v. Aetna Cas. &c. Co., 389 Pa. 459 (134 A2d 223) (1957)." *U. S. Fidelity &c. Co. v. Evans,* 116 Ga. App. 93, 96-97 (156 SE2d 809) (1967). No issue of bad faith exists under the facts of this case.

Furthermore, even assuming, as respondent contends, that the law imposes a duty of "due care" on the insurer with respect to the settlement of claims against its insured (see, e.g., American Underwriters Ins. Co. v. Shook, 247 Ark. 1082 (449 SW2d 402) (1970); Farmers Ins. Exchange v. Schropp, 222 Kan. 612 (567 P2d 1359)

(1977); see also *Allstate Ins. Co. v. Harris,* 133 Ga. App. 567, 571 (211 SE2d 783) (1974); *Francis v. Newton,* 75 Ga. App. 341 (43 SE2d 282) (1947). But see *Jones v. Southern Home Ins. Co.,* 135 Ga. App. 385, 388 (217 SE2d 620) (1975)), the record establishes as a matter of law that GEICO acted reasonably under the circumstances. All parties to the negotiations were aware that the insured might be held liable for contribution or indemnity if his only protection were a covenant not to sue. The problem was one of weighing relative risks. Because the insured had run off, he could not assist GEICO in understanding the nature of the case. Nor could GEICO receive any input from the insured as to his preferences with regard to the case. See Eklund v. Safeco Ins. Co., 579 P2d 1185 (Colo. App. 1978). Under these circumstances, if anyone should bear legal responsibility for the $121,000 judgment, it is the insured himself.

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 10, 1982.

*Joseph H. Chambless, John Burke Harris III,* for appellant. *Tom Pye,* for appellee.