63803. LEADER NATIONAL INSURANCE COMPANY v. SMITH et al.

MCMURRAY, Presiding Judge.

In January of 1977 George Kemp, who had been in the trucking business in his own name or that of Kemp & Son Trucking Company, incorporated the business known as Kemp & Son, Inc.

On February 12, 1977, George Kemp purchased a 1968 Mack tractor with identification No. F685ST1492 from a Mr. James Fiveash or Fiveash Transportation Company, or Five Transportation Company upon paying $500 down. He took delivery of the vehicle on February 14, 1977. One version is that Kemp paid $500 down and took delivery of the vehicle on February 14, 1977, with the full final payment of $1,500 being made on March 8, 1977, and title to the tractor was then signed over to him. As to these checks in payment, it is not clear whether they were the personal checks of George Kemp or business checks of Kemp & Son, Inc., as he was the majority stockholder and used corporate checks in many instances, generally transacting business through his business checkbook. Another version is that Kemp, for his corporation, Kemp & Son, Inc., paid for the tractor with one corporate check in the amount of $2,000. Record title, however, was issued in the name George Kemp on April 28, 1977. The registration and title papers appear to be from the seller Five Transportation Company to George Kemp.

On April 20, 1977, Leader National Insurance Company issued its policy of insurance No. AC10-8 37 73, effective March 14, 1977, to George Kemp and Kemp & Son, Inc. covering all the trucks used by Kemp & Son, Inc. (as "named insureds") in its business of hauling stumps under an independent contract arrangement with Hercules, Inc. The 1968 Mack tractor was not listed in this insurance policy on

the date of issuance (the policy was actually delivered and issued on April 20, 1977, but its effective date was March 14, 1977). Under the insuring agreements therein defining automobiles, etc., including automatic insurance and purpose of use defined, a newly acquired automobile was defined as one that replaces another automobile owned by the named insured or his spouse and covered by this policy under certain coverages or coverages for bodily injury, liability and property damage; or an automobile owned by the named insured which becomes insured "on the date of its delivery, and the named insured . . . notifies the company within thirty days following such delivery date." Under other coverages, such as comprehensive, collision or upset, fire, lightning and transportation and theft, the policy was expressly limited to the actual cash value or $10,000 as to the newly acquired automobile, whichever is the lesser, the named insured to pay any additional premium required because of the application of the insurance to such newly acquired automobile.

The 1968 Mack tractor, however, was not operational at the time of its purchase and delivery and required extensive repairs. On March 28, 1977, after the repairs were made and the vehicle became operational it was delivered to Kemp & Son, Inc. by George Kemp and thereafter used extensively by Kemp & Son, Inc. in its trucking business. A certificate of title was not transferred from Mr. Kemp to the corporation. However, its transfer was listed as a corporate asset on April 1, 1977 (value of $2,000).

On April 25, 1977, an automobile incident occurred involving this 1968 Mack tractor (which incident eventually claimed the life of James Michael Smith on October 24, 1977). On April 27, 1977, two days following this incident, the insurance company agent for Leader National Insurance Company received an oral request to add the Mack tractor, and Leader National Insurance Company issued an endorsement adding same, showing March 28, 1977, as the date of acquisition of said vehicle by Kemp & Son, Inc.

Considerable litigation then followed. On May 2, 1977, suit was filed by Virginia Smith against George Kemp, d/b/a/ Kemp & Son Trucking Company, a company employee, and Hercules, Inc. Virginia Smith later dropped George Kemp, d/b/a Kemp & Son Trucking Company and added Kemp & Son, Inc. to her suit. After the death of James Michael Smith, Virginia Smith filed a wrongful death action against the estate of the now deceased employee of Kemp & Son, Inc., Kemp & Son, Inc. and Hercules, Inc. James G. Smith, as administrator of the estate of James Michael Smith, likewise filed suit against the estate of Kemp's deceased employee, Hercules, Inc., and Kemp & Son, Inc., following the death of James Michael Smith. The damage suits by the Smiths were later dismissed as to Hercules,

Inc. on a covenant not to sue.

In the meantime, on August 24, 1977, Leader National Insurance Company filed its petition for declaratory judgment and temporary injunction, naming as defendants, Mrs. Virginia Smith, as the mother and natural guardian of the decedent, James Michael Smith; the administrator of the estate of the employee (now deceased) of George Kemp, d/b/a Kemp & Son Trucking Company; Hercules, Inc., and George Kemp, d/b/a Kemp & Son Trucking Company setting forth much of the facts shown above, contending that George Kemp had called upon the plaintiff to defend the suits and afford coverage for him for damages arising from the collision. It prayed that its rights and obligations be determined, for a temporary restraining order and temporary injunction be entered until the merits of the plaintiff's petition could be heard and passed on and the rights and obligations of the parties be determined; and that the court find no coverage existing on April 25, 1977, and plaintiff has no liability to said defendants to defend said suit or to respond to any judgment rendered against said defendants (the estate of the employee "and/or George Kemp"). The defendants answered, in general, denying the claims for declaratory relief, and, after discovery, the plaintiff moved for summary judgment.

While the declaratory judgment action was pending and after the filing of the motion for summary judgment, counsel for Leader National Insurance Company, which was of counsel for certain defendants in the damage suits, withdrew therefrom; and in January 1980 judgments in excess of $600,000 were rendered against the defendants, a jury trial having been waived.

In October 1980 the Smiths and Kemp & Son, Inc. filed suit against Leader National Insurance Company and Insurance Professionals of Georgia, Inc. (broker for Leader National Insurance Company's agent) to collect the amount of the judgments rendered against Kemp & Son, Inc.

Virginia Smith and George Kemp, d/b/a Kemp & Son Trucking Company, thereafter filed their motion for summary judgment in the declaratory judgment action on April 10, 1981. Both motions for summary judgment came on for a hearing, and on October 8, 1981, the trial court denied the plaintiff's (the insurer) motion for summary judgment and granted summary judgment to the defendants Mrs. Virginia Smith and George Kemp, d/b/a Kemp & Son Trucking Company, expressly determining as a matter of law that the insurer provided coverage on the vehicle in question and that it owed a duty to represent Kemp & Son, Inc. in the lawsuits. Plaintiff (insurer) appeals. *Held:*

With reference to the two enumerations of error (denial of

plaintiff's motion for summary judgment and the granting of summary judgment in favor of the defendants, Mrs. Virginia Smith and George Kemp d/b/a Kemp & Son Trucking Company), we are concerned here with whether or not George Kemp and Kemp & Son, Inc., the named insureds under the policy of insurance, as endorsed on April 28, 1977, insuring the 1968 Mack tractor involved in the incident which claimed the life of the deceased after the incident in question, had an insurable interest in the newly acquired automobile (Mack tractor) so that it was fully covered under the existing policy of insurance as endorsed. Code Ann. § 56-2405 (Ga. L. 1960, pp. 289, 658) provides that no insurance contract shall be enforceable "except for the benefit of persons having, at the time of the loss, an insurable interest in the things insured," that is, "any actual lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." At the time of the loss, record title was in the name of George Kemp. Nevertheless, the defendants contend that Kemp & Son, Inc. had an insurable interest in the vehicle in question on March 28, 1977, and thereafter, citing as authority *American Mut. Fire Ins. Co. v. Cotton States Mut. Ins. Co.,* 149 Ga. App. 280, 281-283 (2) (253 SE2d 825); *Canal Ins. Co. v. Woodard,* 121 Ga. App. 356 (1), 358-359 (173 SE2d 727); and *Canal Ins. Co. v. P & J Truck Lines,* 145 Ga. App. 545, 546-547 (2) (244 SE2d 81), overruled on other grounds (Division 3) in *United Family Life Ins. Co. v. Shirley,* 242 Ga. 235, 238 (248 SE2d 635). In *Canal Ins. Co. v. Woodard,* 121 Ga. App. 356 (1), supra, the ruling of this court was that the evidence clearly indicated the completion of a trade of automobiles and that as between the parties ownership may change hands without the necessity of transferring a title certificate by the seller and the obtaining of a new one in the name of the purchaser. In *American Mut. Fire Ins. Co. v. Cotton States Mut. Ins. Co.,* 149 Ga. App. 280, 281-283, supra, which is based upon *Canal Ins. Co. v. P & J Truck Lines,* 145 Ga. App. 545, 546-547 (2), supra, there was no question of fact as to whether a sale had been completed so as to pass ownership of the automobile based upon Code Ann. § 109A-2—401 (2) (Ga. L. 1962, pp. 156, 200) as follows: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." We would have no trouble in affirming the judgment of the trial court here if the evidence demanded a finding that the motor vehicle in question was originally purchased by George Kemp during the months of February or March 1977, becoming operational after its repair and delivery to

Kemp & Son, Inc. on March 28, 1977, thereafter used extensively by the corporation in its trucking business, the incident in question occurring on April 25, 1977, with the policy thereafter being endorsed clearly showing March 28, 1977, as the date of acquisition of said vehicle by Kemp & Son, Inc. with the endorsement insuring same on April 27, 1977, two days after the incident in question which the defendants contend allegedly insured the defendants as to that incident. If the above facts were true and correct, coverage of the 1968 Mack tractor would be within the automatic insurance provisions as a newly acquired automobile issued by the insurer to the insureds, George Kemp and Kemp & Son, Inc. However, the testimony of George Kemp and the public accountant who performed certain work for George Kemp or Kemp & Son, Inc. during the period 1976 through the middle of 1978 have placed a cloud upon the issue of ownership of the tractor from which inferences, along with the other evidence presented in opposition by the plaintiff, create substantial controversy as to the actual ownership of the tractor on the date of the incident in question. For instance, George Kemp has testified to three conflicting versions of his interest in the tractor in question, albeit his conception of the law may have been erroneous. In his deposition of August 24, 1977, his testimony was that he believed on the date of the incident (April 25, 1977) that Five Transportation Company was the owner. An inference could be drawn from his testimony that the tractor not only was titled in Five Transportation Company at that time, but that it also was still the owner. In his deposition of December 29, 1980, Kemp testified that he owned the tractor on the date of the incident, that he became the owner on the date he made the agreement with the previous owner, Fiveash (Fiveash Transportation Company or Five Transportation Company) and made the first payment to him. We note here that he contends he made two payments by check, $500 and $1,500, to purchase the vehicle either for himself or Kemp & Son, Inc., as the case may be. Yet his public accountant appears to testify that he generally purchased equipment for the corporation using corporate checks and that only one check for $2,000 was used in the purchase. In Kemp's deposition of February 23, 1981, his testimony was that Kemp & Son, Inc. owned the tractor in question on the date of the incident (April 25, 1977) and that he had transferred it to his corporation within 30 days of the date of the incident. We note here that the public accountant testified that his accounting records of Kemp & Son, Inc. show the vehicle in question was listed as an asset on April 1, 1977, from George Kemp at a cost of $2,000, although his testimony infers that it was originally purchased by George Kemp for the corporation in February or March of 1977, depending upon

whether a single corporate check of $2,000 was issued for its purchase or whether or not Kemp's testimony may be believed that a partial payment was made in February 1977 with full and final payment of $1,500 on March 8, 1977. Mr. Fiveash deposed that Five Transportation Company received $2,000 for the tractor — "the sum of $500.00 on February 14, 1977, as partial payment from George Kemp and the balance of $1,500 . . . on March 8, 1977." An officer of a bank deposed that a $1,500 check was issued by "Kemp and Son" in favor of Five Transportation Company. However, this evidence does not establish whether or not the tractor was that of George Kemp, later transferred to Kemp & Son, Inc., or whether or not it was originally purchased for Kemp & Son, Inc. In addition to the above conflicting testimony, the plaintiff has produced other testimony from which it may be inferred that record title remained at all times after it was received in George Kemp from April 28, 1977, until it was conveyed to another in 1981. Therefore, based on the inferences which may be drawn from the evidence shown above, a conflict remains for jury determination after weighing the contradictory assertions.

The evidence simply does not demand a finding for either party in consideration of their motions for summary judgment. We do not agree that the trial court should have totally disregarded Kemp's inconsistent statements on the ground that the contradictions were intentionally and deliberately made based upon *Combs v. Adair Mtg. Co.,* 245 Ga. 296 (264 SE2d 226); and *Chambers v. Citizens & Southern Nat. Bank,* 242 Ga. 498 (249 SE2d 214). The record does not disclose an intentional and deliberate attempt to confuse or mislead the court. See *Brooks v. Douglas,* 154 Ga. App. 54, 58 (267 SE2d 495).

Further, we do not hold this layman's statements as to the status of the ownership and title of the tractor in question at the time of the incident from which the decedent lost his life demanded a finding that title to the vehicle and ownership passed to George Kemp on February 14, 1977, and remained there until he sold the vehicle in 1978. A jury could determine from the facts that even if record title never went into Kemp & Son, Inc. and was thereafter sold in 1978, that the owner of said property (even though conveyed by George Kemp) under the evidence and cases cited above was at all times after March 28, 1977, when it was delivered and put into operation by Kemp & Son, Inc., the property of Kemp & Son, Inc.; and this corporation was the owner having an insurable interest in said property. Therefore, based upon the conflicting testimony from which various inferences may be drawn by a jury the trial court did not err in denying summary judgment in favor of the insurer but did err in granting summary judgment in favor of the defendants.

*Judgment affirmed in part and reversed in part. Banke and Birdsong, JJ., concur.*

DECIDED JUNE 17, 1982.

*Terry L. Readdick,* for appellant.
*Jack S. Hutto, William H. Glover, George M. Rountree, C. L. Higgison, Karen M. Krider,* for appellees.