## 70258. LEADER NATIONAL INSURANCE COMPANY
v. SMITH et al.
## 70341. KEMP & SON, INC. v. LEADER NATIONAL
INSURANCE COMPANY.
(339 SE2d 321)

BEASLEY, Judge.

We begin our delving into this case with the concluding analysis of the trial court ringing as an admonition and warning in our ears. The court wrote in one of the orders appealed from: "This case is a total and absolute mess. The record is voluminous [8 volumes constituting 1721 pages] and confusing . . . [this order is] paving the way for another five years of litigation." We will try to sort out the former and preclude the latter.

### 70258

This case is one of four lawsuits stemming from a 1977 accident in which Smith was killed when his truck collided with a tractor-trailer driven by Neal, an employee of Kemp & Son, Inc. (Kemp). Smith's mother and the administrator of Smith's estate filed separate wrongful death and negligence actions against Kemp and its employee (the driver Neal). Kemp's insurer, Leader, initially entered a defense on behalf of Neal's estate, Neal having died in the interim, but withdrew soon after and denied coverage. Another attorney represented Kemp. The cases were consolidated for trial and were tried without a jury in January 1980 against Neal's administrator and Kemp. No one, and no counsel, appeared for either of these two defendants. The trial court noted that it was aware Kemp's insurer had withdrawn its counsel due to its denial of coverage. The court proceeded, having concluded that all parties involved had sufficient time to protect their legal interests as the cases had been pending since December 1977. Judgments totalling over $667,000 were entered for Smith's mother and the administrator. No appeals were taken.

Kemp, the administrator, and Smith's mother then filed the present action against Leader to recover the judgments and costs of defending the tort actions, contending there was coverage under Kemp's policy.

Prior to the entry of judgments in the tort actions, and so prior to the instant suits, Leader had petitioned for declaratory judgment alleging that the tractor-trailer involved was not covered under Kemp's insurance policy because it was purchased individually by the company's president. This court affirmed the denial of summary judgment to Leader, determining that a conflict remained for jury determination of the insurance coverage issue. *Leader Nat. Ins. Co. v. Smith*, 162 Ga. App. 612 (292 SE2d 456) (1982). Leader then volunta-

rily dismissed the declaratory judgment action, apparently because the same issue was pending in the present action, and filed a motion for summary judgment in it. The motion was denied, and we granted Leader's application for review. This prompted a cross-appeal by Kemp against Leader and the insurance agent as the trial court had also dismissed certain of Kemp's claims.

Insurer asserts that the trial court erred in refusing to grant it summary judgment because the tort judgments upon which the present suit is based are invalid due to the failure of all parties to waive jury trial.

In response to insurer's argument for summary judgment based on lack of waiver of jury trial, the Smiths on April 4, 1984 obtained a nunc pro tunc order to correct the judgments in the negligence actions which had reflected that Neal was a party defendant. The order stated that Neal had been voluntarily dismissed as a defendant at trial upon announcement by the Smiths, inasmuch as no waiver of a jury trial "could be obtained [from Neal] because of his death and because of the type of administration of his estate, i.e. the County Administrator, in a no-asset administration case." The order also stated that Kemp had waived a jury trial.

A few weeks later the court, at the instance of Leader and without notice to the Smiths, vacated its nunc pro tunc order of April 4, explaining it had entered the April 4 order relying upon the recollection of plaintiffs' counsel as to what occurred at the tort trials, but that upon further review of the record it appeared to be incorrect. The court cited the following language found in the tort judgments as persuasive: "The Court is aware, from the examination of the records and by statement of counsel, of the following facts, to wit: . . . . 2. That the suit *had been amended*, dismissing all defendants, with the exception of C. L. Higgison, as Administrator of the Estate of Boisey Neal, (who was killed some three weeks after this accident in another accident), and Kemp & Son, Inc. That the attorney for Kemp & Son, Inc., had withdrawn and there was no appearance of any other counsel in this case for Boisey Neal and/or Kemp & Son, Inc. 3. That the Court was informed that there was a controversy between the alleged insurance carrier for Kemp & Son, Inc., and Boisey Neal as their agent as to coverage and the record shows that counsel for the said insurance company had withdrawn from the case and denied and/or rejected any participation in said case." (Emphasis supplied.)

Kemp had raised no objection to the original judgments and did not object to the nunc pro tunc order. Upon a motion by the Smiths to vacate the April 27 order, a hearing was held on May 23. The judge, upon motion, disqualified himself from further proceedings without ruling on the motion to vacate. It then came before another judge who, on October 16, upon hearing arguments of counsel, the

testimony of an attorney of a former party defendant who was dismissed from the actions, and a review of the record, vacated the April 27 order as invalid and reinstated the April 4 nunc pro tunc order. The reasons given were lack of notice to all parties with respect to the later order and secondly, "[i]t was the intent of plaintiffs to dismiss [the estate of] Boisey Neal as a defendant [in the tort actions] and not proceed against him to Judgment." This left Kemp as the sole defendant in the actions.

Leader contends that the administrator of Neal's estate was never dismissed as a party defendant, that the April 27 order vacating the nunc pro tunc order was proper and should not have been vacated, and that the nunc pro tunc order of April 4 should not have been reinstated. It follows, says Leader, that because Neal's administrator was not dismissed as a party defendant, the tort judgments are invalid because Neal's administrator did not waive his right to jury trial.

1. May Leader attack the underlying tort judgments in this proceeding? "When a court purports to render a judgment beyond its jurisdiction, the judgment is void. [Cit.] . . . [A] judgment rendered by the court when a jury verdict is required by statute is void . . . [Cit.]." *McCarthy v. Holloway*, 245 Ga. 710, 711 (267 SE2d 4) (1980), citing *Canal Ins. Co. v. Cambron*, 240 Ga. 708 (242 SE2d 32) (1978) and *Greene v. Greene*, 76 Ga. App. 225 (45 SE2d 713) (1947). "A judgment void on its face may be attacked in any court by any person. In all other instances, judgments shall be subject to attack only by direct proceeding brought for that purpose" by motion for new trial, motion to set aside, or complaint in equity. OCGA § 9-11-60 (a) and (b). Generally, "judgments which are void for causes not appearing on their face may only be attacked directly and only by parties to the judgment or their privies. [Cits.] However, a judgment void on its face may be attacked in any court by any person when it becomes material to the interests of the parties to consider it. [Cits.] An attack upon a void judgment may be made directly in equity or collaterally. [Cit.]" *Wasden v. Rusco Indus.*, 233 Ga. 439, 444-45 (2) (211 SE2d 733) (1975).

Leader attacks the judgments collaterally, specifically challenging two aspects of the October 16 modification: first, the conclusion that Neal's administrator was dismissed from the suit, thereby reinstating the April 4 nunc pro tunc order, and second, the conclusion that vacating the April 4 order was improper due to the lack of notice to all parties. It is not apparent from the face of the judgments as modified, however, that the judgments were void. Therefore Leader may not complain. *Wasden*, supra.

2. " 'Our Code provides: "Every court has power — To amend and control its processes and orders, so as to make them conformable

to law and justice; and to amend its own records, so as to make them conform to the truth." ' [OCGA § 15-1-3 (6) (Code Ann. § 24-104).] "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." [OCGA § 9-11-60 (g) (Code Ann. § 81A-160).] . . . [T]he language "amend its own records" includes " 'amending' the record by reducing to writing an order which had previously existed only as an oral statement and was therefore not properly a part of the record at all (. . .)" *Israel v. Joe Redwine Ins. Agency*, 120 Ga. App. 14, 16 (169 SE2d 347) (1969)." *Savannah Iron &c. Corp. v. Mitchell*, 168 Ga. App. 252 (308 SE2d 569) (1983).

Clerical mistakes and errors may be modified under OCGA § 9-11-60 (g) (Code Ann. § 81A-160) "only 'where the clerical error or omission is obvious on the face of the record.' However, . . . [there is] an exception to this general principle where there has been a hearing on a motion to correct the judgment, and the evidence compels the conclusion that the omission was in fact a clerical error." *Cagle v. Dixon*, 234 Ga. 698, 700 (217 SE2d 598) (1975). Here the error is not obvious on the face of the record. Therefore notice and opportunity for a hearing were necessary for correction of the judgments under OCGA § 9-11-60. The trial court properly concluded that because of no notice, the April 27 order vacating the April 4 correction was not authorized. Id.

Plaintiffs were entitled to notice and opportunity to be heard because the effect of the April 27 order was to render void the judgments which they had diligently pursued and proved. Plaintiffs should have had an opportunity to show that the recitation in the judgments that certain parties had *previously* been dismissed by amendment to the pleadings did not go far enough and record that *at trial* Neal's administrator also was dismissed. Plaintiffs' position was not that the April 4 order was inconsistent with the judgments, but rather that it complemented them by adding what occurred at the trial to what was shown by the pleadings.

If notice had been given of the withdrawn insurer's motion, the omission in the record of what actually transpired at trial could have been clarified and the matter concluded then. Instead, the lack of a hearing compounded the problem and resulted in subsequent motions, hearings, the recusal of a judge, the necessity for another judge to become injected in a procedural morass, and the finality of the judgment delayed by the long process which brought this case to us again.

The court below held a full hearing on the substantive issue and was authorized to correct the judgments. Because the judgments as

modified by it are not void on their face, "the presumption arises that there was sufficient evidence to authorize it and the judgment becomes conclusive as to the subject matter which it purports to decide." *Lawing v. Erwin,* 251 Ga. 134, 135 (303 SE2d 444) (1983). Accord *Taylor v. Taylor,* 248 Ga. 723, 724 (1) (285 SE2d 695) (1982).

3. Leader additionally argues that the record reveals Kemp also did not waive a jury trial. To the contrary, the record shows that Kemp expressly waived the right to trial by jury in its answer to plaintiffs' amended complaints. In addition, Smiths' attorney stated in an affidavit that Kemp waived a jury trial. In its brief on the cross-appeal, Kemp also admits that it had waived jury trial.

4. The trial court properly rejected Leader's argument in support of its motion for summary judgment that the underlying judgments as modified by the nunc pro tunc order were void. The court found as fact that Neal's administrator had been voluntarily dismissed as party defendant and that the Smiths proceeded only against Kemp at trial. This finding is supported by the record in that (1) Wallace Harrell, an attorney who attended at least part of the trial although his client, a former party defendant, had already been dismissed from the actions, testified at the hearing on May 23 that the Smiths announced to the court at trial that they were proceeding only against Kemp. An affidavit by Harrell was also filed to this effect. (2) Smiths' attorney testified at the May 23 hearing that he announced at the beginning of the tort trial that Neal's administrator was dismissed and that the Smiths were proceeding solely against Kemp. His affidavit makes these same representations. (3) The tort judgments as originally entered do not contradict this finding. Although they recite that the suits had been amended "dismissing all defendants with the exception of C. L. Higgison, as Administrator of the Estate of Boisey Neal . . . and Kemp & Son, Inc." and that "there was no appearance of any other counsel in this case for [the estate of] Boisey Neal and/or Kemp & Son, Inc.," there is no statement whatsoever as to an announcement at trial that Neal's administrator was dismissed. Thus, the judgments do not cover the subject. (4) There is evidence that Smiths' attorney knew a waiver of jury trial by all defendants was necessary for a bench trial but that he could not get one from Neal, who was dead, or apparently the administrator, and further, that there was no money to be obtained by proceeding against Neal's estate. This, too, supports the trial court's finding that Neal's administrator was dismissed as a party defendant; for the Smiths to have proceeded against Neal's administrator in the light of this knowledge would have been useless.

The Constitution of Georgia as well as the Civil Practice Act guarantee the right of a jury trial to civil litigants in most cases. *Raintree Farms v. Stripping Center,* 166 Ga. App. 848 (1) (305 SE2d 660) (1983). The Georgia Constitution effective at the time of the tort trial

provided, "The right of trial by jury, except where it is otherwise provided in this Constitution, shall remain inviolate . . ." 1976 Ga. Const., Art. VI, Sec. XV, Par. I. The Civil Practice Act sets forth: "The right of trial by jury as declared by the Constitution of the state or as given by a statute of the state shall be preserved *to the parties* inviolate." (Emphasis supplied.) Code Ann. § 81A-138 (now OCGA § 9-11-38). Thus, this is a right of the parties to the action. And, as explained above, Neal's administrator was not a party to the tort actions, having been dismissed prior to trial. Accordingly, there was no need to obtain a waiver of jury trial from him.

Even if Neal's administrator was not in fact and in effect dismissed from the tort actions, it is his right to trial by jury now at issue, and he has not complained. Leader, whose counsel represented Neal's estate at the onset of the tort actions and who withdrew its representation long before the cases went to trial, was never a party to the actions. It has no cause to commandeer that which was personal to Neal. Had it wished to become a party to the actions, thereby preserving a right to demand a jury trial, it could have filed a motion to intervene pursuant to OCGA § 9-11-24 (formerly Code Ann. § 81A-124). We recognize, of course, that had the tort judgments been void on their face, Leader could collaterally attack them. *Canal Ins. Co.,* supra at 712.

Leader withdrew participation through its own deliberate action. Had it not denied policy coverage, it would have participated in the suits, and it could have demanded a trial by jury for Neal's estate. But its counsel withdrew representing Neal's estate. Insurer cannot now try to correct a tactical error made five years ago to withdraw from representing the interests covered by its policy, and which resulted in a default judgment against its insured, by asserting that Neal (or his administrator) was never dismissed from the suits and never waived his right to jury trial. As explained in *Richmond v. Ga. Farm Bureau Mut. Ins. Co.,* 140 Ga. App. 215, 218 (1) (231 SE2d 245) (1976), " 'By refusing to defend, the company loses all opportunity to contest the negligence of the insured or the injured person's right to recover, . . . [Cit.]"

5. Leader contends that the trial court erred in denying its motion for summary judgment based upon *Great American Ins. Co. v. McKemie,* 244 Ga. 84 (259 SE2d 39) (1979) and the doctrine of "later-revealed facts," asserting that at the time it denied coverage of the negligence actions all of the facts indicated that the claims would not be covered under the insurance policy. It argues that it was only upon the uncovering of "later-revealed facts" that the issue of policy coverage became questionable.

Whether Leader is entitled to summary judgment on the issue of policy coverage has already been addressed by this court. In *Leader*

*Nat. Ins. Co.*, supra, the related declaratory action, it was concluded that the evidence did not demand a finding for Leader on its motion for summary judgment, explaining that the jury could determine from the conflicting evidence that the company owned the vehicle which was therefore covered, even if it found that record title remained with the company president. The court held that "based upon the conflicting testimony from which various inferences may be drawn by a jury the trial court did not err in denying summary judgment in favor of the [insurer] . . ." That controls here. Id. p. 617.

OCGA § 9-11-60 (h) provides, "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." In effect, the case at bar is a subsequent proceeding of the same case, and Leader is therefore bound by our earlier ruling. The facts are identical. Indeed, the trial court consolidated the records of the negligence actions, the declaratory judgment action and the present action by order on October 25, 1984, "for purposes of the trial of this action and any motions or other proceedings associated with this action," stating "all of said actions being integrally related." Leader voluntarily dismissed the declaratory judgment action because "the same issues [were also] pending" in the present action. Thus, for all practical purposes the declaratory judgment action merged with the action at bar.

Even if this is not a subsequent proceeding of the declaratory judgment action, Leader's hopes remain fruitless. The court in *Ellington v. Tolar Constr. Co.*, 142 Ga. App. 218, 220-221 (1) (235 SE2d 729) (1977), explained, "the only 'final judgment' when an appellate court affirms the denial of summary judgment is that under the evidence of the record at that point there can be no judgment for the moving party as a matter of law . . . Denial of a motion for summary judgment decides nothing except that under the evidence before the court at that time there can be rendered no judgment as a matter of law." Here the evidence in the record has not changed and there has been no additional evidence entered since the trial court's denial of summary judgment on the declaratory judgment action and our affirmance on appeal. What has changed is that Leader now makes additional legal arguments to support its motion. Because the evidence remains the same, our holding in *Leader Nat. Ins. Co.*, supra, is a final judgment on this matter, and insurer is estopped from relitigating it. "A plea of estoppel by judgment stems from the doctrine of res judicata and is available 'when there has been a former adjudication of the same issues by the parties or their privies, even though the adjudication may not have been upon the same cause of action.' [Cit.]" *Blakely v. Couch*, 129 Ga. App. 625, 627 (1) (200 SE2d 493)

(1973).[1]

Our prior opinion aside, Leader's reliance on *Great American Ins. Co. v. McKemie,* supra, and the "later-revealed facts doctrine" in support of its argument for summary judgment is misplaced. Apparently, Leader is arguing that *Great American Ins. Co.* stands for the proposition that only evidence available at the time insurance coverage is denied is to be reviewed in determining whether insurer erred as a matter of law in refusing to defend the insured from suit. It is further contending that all information available at the time it refused to defend reflected that there was no policy coverage.

Leader misinterprets the court's holding in *Great American Ins. Co.,* supra at p. 85. The Supreme Court there concluded that where the complaint filed against insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend insured's suit. The opinion stated that "allegations of the complaint are looked to to determine whether a liability covered by the policy is asserted.' [Cit.]" It announced that as to any later-revealed facts — those facts which are revealed after insurer has refused to defend which would then bring the case within the coverage of the policy — insured must notify insurer and "again call upon it to defend," because "the correctness of an insurer's decision to defend or not cannot be determined by 'later-revealed facts' of which the insurer has no knowledge or notice." Id. Thus, the focus is on whether insurer was given adequate notice of possible insurance liability and then chose not to defend. See also *St. Paul Fire &c. Ins. Co. v. Mitchell,* 164 Ga. App. 215, 216-217 (296 SE2d 126) (1982); *Dixon v. Midland Ins. Co.,* 168 Ga. App. 319, 323 (309 SE2d 147) (1983).

The complaints at issue here were sufficient to put Leader on notice of possible coverage. The complaints alleged, "That at said time and place [of collision], said Defendant, Boisey Neal, was in the course and scope of his employment with Defendant[s] . . . Kemp & Son Trucking Co., in such a capacity that an agency relationship existed, thereby any acts of negligence of said Defendant, Boisey Neal would be directly imputable to . . . Kemp & Son . . ." As the insurer of Kemp's vehicles, it was under an obligation to investigate whether the vehicle involved was covered under Kemp's policy before it took the position of denying coverage and assuming the risk of whatever transpired at trial. Leader cannot complain that it lacked "knowledge or notice" of potential liability since it had originally opted to defend employee Neal's estate and had also petitioned the court for a declar-

[1] See *Norris v. Atlanta & West Point R. Co.,* 254 Ga. 684 (333 SE2d 835) (1985), for discussion regarding distinction between res judicata and collateral estoppel.

atory judgment on the issue of coverage. Apparently it dropped out based on a layman's opinion of ownership arising out of a muddied transaction. In so doing, Leader refused to defend the negligence suits at its own peril.

What is involved here is a question of fact, whether the tractor-trailer was a company truck at the time critical for insurance coverage. The application of law will depend upon the resolution of disputed facts, as we said in 1982. *Leader Nat. Ins. Co.*, supra. That dispute was sufficiently evident when Leader chose to abandon the defense so as to render proper the denial of summary judgment in its favor based on the later-revealed facts doctrine.

### 70341

Kemp's cross-appeal cites two enumerations of error: one, that the court erred in dismissing its count one for negligent breach of contract and/or bad faith tort; two, that the court erred in dismissing Kemp's claim for the full amount of the judgments, over and above the policy limits.

The record shows that Leader moved to dismiss count one, the negligence count, in its entirety for failure to state a claim. It also moved to dismiss count two, the contract claim, for the same reason. With respect to count two, it further moved for dismissal (actually, striking) of the prayer for "consequential damages" in count two and also the prayer "for the full amount of the judgments" in count two. With respect to these and other aspects of its motion, it moved in the alternative for summary judgment.

1. As to the first enumeration, despite the use of the word "bad faith" and the adjectives "negligent" and "wilful and wanton" in count one, all of the acts charged as torts are acts constituting breach of contract. They all relate to the duty to defend and simply expand on various aspects of that duty. As a matter of fact, all of the acts are alleged in identical language in count two as constituting breaches of the contractual obligations of Leader. As Kemp correctly points out, every contract imposes a duty of good faith and fair dealing in the fulfillment of each party's obligations undertaken. *Smithloff v. Benson*, 173 Ga. App. 870, 872 (1) (328 SE2d 759) (1985).

The crux of the argument is that Leader failed to fulfill its contractual duty to defend, which included among other things the duty to advise the insured what its position was with respect to defending, the duty to prevent default and prejudice to the insured, and the duty to act in good faith and deal fairly in all of these matters. Appellant apparently perceives the "equal consideration" concept to impose a legal duty over and above the contract obligations to defend so as to render its violation a tort. But if it relates to the contractual duty to

defend, it merely states a standard against which fulfillment is to be measured. It would mean that in acting, the insurer must give at least equal consideration to the interest of the insured. The case cited by appellant applies an "equal consideration" concept in the context of a tort case involving a non-contractual duty to settle: *U. S. F. & G. Co. v. Evans*, 116 Ga. App. 93 (156 SE2d 809) (1967), aff'd 223 Ga. 789 (158 SE2d 243) (1967). See also *Government Employees Ins. Co. v. Gingold*, 249 Ga. 156, 158 (288 SE2d 557) (1982), which recognizes that a tort action may be maintained for bad faith refusal of an insurer to settle a liability claim against its insured within policy limits, and that in this connection insurer must give its insured's interests "the same faithful consideration" it gives its own.

Finally, Kemp relies heavily on *Richmond v. Ga. Farm Bureau &c. Ins. Co.*, 140 Ga. App. 215 (231 SE2d 245) (1976) to support its tort count. That case, however, involved a declaratory judgment action brought by the insurer against the insured to judicially ascertain its obligations for coverage, i.e., payment, under the insurance policy. The issues included the extent and scope of the contractual duty to defend. The court pointed out that " 'By refusing to defend, the company . . . exposes itself to a charge of and penalty for breach of contract' . . . *LaSalle Nat. Ins. Co. v. Popham*, 125 Ga. App. 724, supra, 729." *Richmond*, supra at 218. *LaSalle*, too, cited by appellant, speaks only of a breach of contract action arising from a failure to defend. The court in *Richmond* instructed, in connection with the duty to defend, that where insurer has notice there may be grounds for noncoverage and insured refuses to consent to defense under a reservation of rights, "insurer *must . . .* take necessary steps to prevent the main case from going into default or to prevent the insured from being otherwise prejudiced, . . ." (Emphasis supplied.) *Richmond*, supra at 219. The course of action taken by the insurer there was approved by the court as a fulfillment of insurer's duty to defend because it "fully informed the insured and prevented any default being obtained in the litigation." *Richmond*, supra at 220.

" 'It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. [Cits.] Such an independent harm may be found because of the relationship between the parties, or because of defendant's calling or *because of the nature of the harm*. [Cits.] [Emphasis supplied.] However, not all breaches of contract are also independent torts: '. . . where defendant's negligence ends merely in nonperformance of the contract and where defendant is not under any recognized duty to act apart from contract, the courts generally still see no duty to act affirmatively except the duty based on — and limited by — defendant's

consent.' [Cit.] In those circumstances, an action in tort may not be maintained for what is a mere breach through non-action or through ineffective performance (which is the same thing) of a contract duty — the duty must arise independent of contract to constitute a tort.' Thus, to constitute a tort the duty must arise independent of the contract." *Sheppard v. Yara Engineering Corp.*, 248 Ga. 147, 148-149 (281 SE2d 586) (1981).

In the case at bar, the trial court did not err in eliminating count one because the breach of duty asserted did not arise independent of the contract.

2. The second enumeration of error involves damages. Count two, the breach of contract claim, sought "the full amount of the judgments rendered against [Kemp] plus accrued interest and expenses of litigation because of [Leader's] failure to defend and protect the interests of the insured, plus consequential damages, including but not limited to the value of its business and all other damages flowing from said breach of contract, plus all costs of court in those actions and this action."[2] In its order, the court below dismissed the claim for consequential damages in count two. It made no express ruling on the motion to dismiss the prayer for the full amount of the judgments. Therefore that aspect of damages has not been excluded from consideration by the jury. The enumeration in this regard is thus without merit. The court struck only the consequential damages prayer, and Kemp does not complain about that. Apparently, Kemp has abandoned the effort to recover loss of value of its business and any other unnamed damages it sought to embrace within the "consequential damages" category.

In the event the court below meant to include the judgment amount beyond the policy limits within the category "consequential damages," we will consider whether such may be recovered for breach of the contract obligations to defend. We do so also because even if the court by its silence intended to leave these total judgments damages in the case, the trial has yet to occur and only legal damages should be considered. Thus, the question is whether the full amount of the judgments can be recovered when the insurer fails to defend under an obligation to do so. Or, on the other hand, is it protected by the policy limits?

In *State Farm Mut. &c. Ins. Co. v. Keene*, 111 Ga. App. 480, 482 (142 SE2d 90) (1965), the court discussed the situation "where the insurer refuses to defend an action against the insured based on a claim actually within the coverage of the policy because of its errone-

[2] Count one also sought such damages, but as we have ruled, count one was properly dismissed in its entirety.

ous assumption that such claim is outside policy coverage . . . By an unjustified refusal to defend an action against the insured the insurer becomes subject to certain new and positive obligations, including liability for the amount of the judgment rendered against the insured. 29A Am.Jur. 571, § 1460; 49 ALR2d 717." This was premised upon "[t]he true rule [which] is that the duty to defend is determined by the contract; . . ." Id. at 481.

In *Liberty &c. Ins. Co. v. Mead Corp.*, 219 Ga. 6, 8 (131 SE2d 534) (1963), the court also stated: "At the outset we recognize that the insurer's undertaking with respect to defense of the insured must be determined by the particular contract of insurance between the parties." In that case, the insurer had refused to participate further in the defense of the negligence suit after it had paid the policy limit in settlement of certain of the claims. The court examined the policy and concluded "that under this policy the duty to defend is limited by the amount of liability coverage afforded by the policy." Id. at 9. That policy began with the statement that the insurer agreed with the insured, " 'subject to the limits of liability,' " and then recited what it undertook to do, including the duty to defend, and to pay. In *Maryland Cas. Co. v. Sammons*, 63 Ga. App. 323, 323-324 (11 SE2d 89) (1940), the policy provided: " 'It is further agreed that as respects insurance afforded by this policy under coverage A and B the company shall (a) defend . . . ; (b) pay . . .' " The same or a similar statement does not appear in the policy in this case and it differs meaningfully.

The policy here provides that Leader "[a]grees with the insured . . . subject to all the terms of this policy . . . To pay on behalf of insured all sums which the insured shall become legally obligated to pay as damages, other than punitive damage, . . . With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall: (a) defend any suits against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . . and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy . . . No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company . . ."

Is the full amount of the judgments covered by this policy under the circumstances here? There is evidence that the insurance com-

pany withdrew representation in the suit and did not notify its insured. It is undisputed that default judgments were entered, to the prejudice of insured, far above the policy limits the insurer would otherwise have been obligated to pay. See *Atkinson v. Atkinson*, 254 Ga. 70, 75 (6) (326 SE2d 206) (1985), where the court recognized a duty to defend even though the insurer had paid out its policy limits and concluded that insurer may not abandon defense of the claim in mid-course to the prejudice of the insured. Compare *U. S. Cas. Co. v. Ga. &c. R. Co.*, 95 Ga. App. 100, 103 (97 SE2d 185) (1957); *Jacobs v. Ga. Farm Bureau Mut. Ins. Co.*, 114 Ga. App. 296 (2) (151 SE2d 187) (1966); *Residential Developments v. Merchants Indem. Co.*, 122 Ga. App. 503, 505-506 (177 SE2d 715) (1970). In those cases there was not a mid-stream abandonment without knowledge of the insured. Nor does it appear whether the contracts contained the same language as provided here.

It is elementary that "[d]amages are given as compensation for the injury sustained as a result of the breach of a contract." OCGA § 13-6-1. The measure of damages "[is] such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. The question is one for the jury. OCGA § 13-6-4. Of course, if the damages are liquidated, the parties are generally bound to that. OCGA § 13-6-7.

Thus, whether the full amount of the judgments is recoverable for failure to defend and take all the related action in regard thereto which claimant alleges was not done, is a jury question. It depends on whether it finds such to come within the measure allowed by law as related to this contract and the factual circumstances. Damages growing out of a breach of contract, in order to form the basis of a recovery, must be such as can be traced solely to the breach, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and must be such as the parties contemplated as a probable result of the breach. *Sanford-Brown Co. v. Patent &c. Co.*, 199 Ga. 41 (33 SE2d 422) (1945).

If it was comprehended that the amounts above the policy limits fall within the "consequential damages" category, they are not as a matter of law excluded as a measure of damages in contract actions. OCGA § 13-6-8 provides: "Remote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." Loss of profits has often been regarded as consequential damages and is recoverable in contract actions. *Graham Bros. &c. Co. v. C. W. Matthews &c. Co.*, 159 Ga. App. 546, 551 (8) (284 SE2d

282) (1981); *DeVane v. Smith*, 154 Ga. App. 442, 443 (268 SE2d 711) (1980); *Comtrol, Inc. v. H-K Corp.*, 134 Ga. App. 349, 352 (2) (214 SE2d 588) (1975). But as the words of the statute show, they are only an example, and other types of consequential damages would be recoverable if they come within the rule. "Damages growing out of a breach of contract . . . must have arisen according to the usual course of things, and be such as the parties contemplated as a probable result of such breach." *Lankford v. Trust Co. Bank*, 141 Ga. App. 639, 641 (2) (234 SE2d 179) (1977).

We do not conclude that, as a matter of law, the contract limited the liability of the insurance company with respect to its duty to defend, to the amount it would be obligated for pursuant to its duty to pay. In view of any ambiguity in the contract, of course, that interpretation which favors the insured prevails. *Greenwood Cemetery v. Travelers &c. Co.*, 238 Ga. 313, 316 (232 SE2d 910) (1977).

*Judgment affirmed in both cases. Pope, J., concurs. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

While concurring in the judgment of affirmance, it is appropriate to make certain observations. Approximately nine years have elapsed in this case since the time of the 1977 accident. The first appeal made was in 1982. The present appeal was filed in this court in January 1985; oral argument was had in April; and by the time judgment is rendered, which will be around Thanksgiving, and possibly certiorari is considered by the Supreme Court, approximately twelve additional months will have passed.

Presiding Judge Hall, in *Tant v. State*, 123 Ga. App. 760, 763-765 (182 SE2d 502) (1971), addressed the problem of court delay and suggested three proposals for improving and streamlining the Georgia Appellate system through innovative and unique methods:

(a) "Should we have only one appellate court with separate divisions (civil and criminal) similar to the English Court of Appeal?";

(b) "Should we have a separate court of last resort for criminal appeals as in Texas and Oklahoma? Texas Constitution, Art. 5, §§ 1, 5; Oklahoma Constitution, Art. 7, § 4."; and

(c) "Or should all criminal appeals go directly to our highest court as is true in Louisiana? Louisiana Constitution, Art. 7, § 11."

As concluded by Judge Hall, "[a]ny of these proposals would aid in meeting *the problems of delay*, uncertain jurisdiction and conflicting decisions inherent in allowing appellate review in two separate courts." (Emphasis supplied.) Judge Hall, now a judge on the United States District Court for the Northern District of Georgia, wisely did not recommend simply tossing money at the problem by way of the outmoded and ancient idea of adding only more bureaucracy and

more judges to the court.* While Judge Hall was discussing the speeding up of criminal appeals, the same results would obtain in improving the administration of justice in civil cases. All will agree: "Justice delayed is justice denied." The possibility of "paving the way for another five years of litigation," as dolefully anticipated by the trial judge in his order, plus additional lengthy appeals under the facts of this case, should not obtain, as finality at some point in time is required.

DECIDED DECEMBER 3, 1985 —
REHEARING DENIED DECEMBER 19, 1985 — 

*Terry L. Readdick, John E. Bumgartner,* for appellant (case no. 70258).

*William H. Glover, Jr., Jack S. Hutto, George M. Rountree, Karen M. Krider,* for appellees.

*William H. Glover, Jr.,* for appellant (case no. 70341).

*George M. Rountree, John E. Bumgartner, Terry L. Readdick,* for appellees.

---

* Edward W. McConnell, Executive Director of the National Center for State Courts and one of the experts on judicial reform, speaking at Callaway Gardens on March 16, 1985, suggested that the adding of judges is a non-intellectual method of court relief and reform.